Elm Farm Foods Co. *vs.* Paul J. Cifrino & others.

Suffolk.   November 5, 6, 1951. — April 3, 1952.

Present: Qua, C.J., Lummus, Ronan, Spalding, & Counihan, JJ.

*Landlord and Tenant*, Term of lease, Validity of lease, Termination of lease, Covenant against competition, Modification of lease, Sealing of lease. *Equity Jurisdiction*, Other remedy, Specific performance, Declaratory relief, Laches. *Monopoly*. *Evidence*, Judicial notice. *Declaratory Judgment*. *Equity Pleading and Practice*, Parties. *Laches*. *Estoppel*. *Limitations, Statute of*. *Corporation*, Officers and agents.

A lease "for an initial period of" one year, providing that it "shall continue in full force and effect thereafter from month to month until either party shall give sixty . . . days notice in writing to the other party of . . . intention to terminate this lease, in which case the lease hereby created shall terminate in accordance with such notice," was for a term which continued until ended by notice as therein provided and was not too indefinite to be ascertained.

In a suit in equity by the lessee under a lease against the lessor, a demurrer to the bill based on the ground that the plaintiff had a plain, adequate and complete remedy at law was properly overruled where the bill alleged that the defendant had given a notice provided for in the lease to terminate it and intended to evict the plaintiff in breach of a further provision in the lease that the defendant should not give such notice and that the plaintiff might continue in possession of the demised premises so long as certain conditions were met: without specific performance of such further provision the plaintiff as a practical matter could not continue in effective possession.

A provision in a lease, that "nothing herein contained to the contrary notwithstanding" the lessee should have the right to continue to operate its business in the leased premises and the lessor should not give notice to terminate the lease so long as certain conditions were met, qualified the right given by another provision of the lease to the lessor to terminate the lease by giving the lessee sixty days' written notice, and did not affect the right of the lessor under a third provision of the lease to terminate it if, after reasonable notice of breach, the lessee failed to perform any obligation contained in the lease or failed to carry on the business in the leased premises for one business day.

In a lease of certain space in the lessor's market to a corporation engaged in the retail grocery and food business, an agreement by the lessor not to give the lessee notice of intention to terminate the lease "so long

as the lessee conducts its business in a good business-like manner, compatible with the name and reputation of . . . [the lessor] and so long as . . . [the lessee's] sales average a minimum of . . . [a specified sum] per week," was not too indefinite to enforce in a suit in equity by the lessee, in view of the disclosed purposes of the lease and the manner in which the lessee conducted its business.

Provisions of a lease of space in the lessor's market for use by the lessee as a grocery store, that the lessor should not sell or permit any person other than the lessee to sell groceries in the market, except such as were generally carried by delicatessen departments or were purchased from the lessee, that the lessee's profit on sales of groceries to the lessor should be limited to three per cent, and that the lessee should sell groceries at retail at prices not higher than prices in other stores and should meet competition by reducing prices, were not invalid as creating a monopoly in restraint of trade.

This court took judicial notice of the fact that a certain store was merely one of many food stores located in Boston and in the Dorchester district of Boston.

Averments in a bill in equity by a lessee against the lessor, in substance that the defendant agreed not to exercise a right to terminate the lease by notice so long as the plaintiff complied with certain express conditions specified in the lease, that the plaintiff had complied with all terms of the lease and had given the defendant no cause to terminate it, but that the defendant had denied the validity of such agreement by it and had given the plaintiff notice of termination and intended to evict the plaintiff, disclosed the existence of "an actual controversy" within G. L. (Ter. Ed.) c. 231A, § 1, inserted by St. 1945, c. 582, § 1.

A lease under seal although not required by law to be under seal was validly amended by an unsealed instrument.

A corporation owning real estate was estopped to set up its title as against the lessee under a lease of a part of the real estate given by a second corporation, and was a proper party defendant to a suit in equity by the lessee for a declaration and enforcement of the lessee's rights under the lease, where it appeared that the agents, officers and stockholders of both corporations were the same persons and knew, which the lessee did not, that title to the property stood in the name of the first corporation but said nothing about ownership to the lessee, that the second corporation represented that it owned the property, and that the lessee spent much money in reliance on the lease.

Neither laches nor the statute of limitations was a bar to the maintenance of a suit in equity by the lessee under a lease executed fifteen years prior to commencement of the suit against the lessor and the owner of the leased property for a declaration and enforcement of rights under the lease which were not denied by the defendants until shortly before the commencement of the suit.

An officer of a corporation who was not a party to a lease of real estate given by the corporation and who had no title to the real estate was not a proper party defendant to a suit in equity by the lessee for a declaration and enforcement of rights under the lease.

BILL IN EQUITY, filed in the Superior Court on August 11, 1950, and afterwards amended.

A demurrer of the defendants, as amended, was overruled by *Hudson*, J.

*C. Hamilton*, (*J. Schneider* with him,) for the defendants.

*R. W. Meserve*, (*H. F. Lyman, Jr.*, with him,) for the plaintiff.

LUMMUS, J. This case comes here upon a report of the action of the Superior Court in overruling the demurrer of the several defendants to a bill in equity brought against Cifrino, Supreme Markets, Inc., and Superior Realty Co., Inc.

The plaintiff is a corporation engaged in operating retail grocery and food stores, and in operating departments in such stores of others. The defendant Superior Realty Co., Inc., owned a store in the Dorchester district of Boston which it leased to the defendant Supreme Markets, Inc., and on March 12, 1935, Supreme Markets, Inc., leased under seal a department in that store to the plaintiff "for an initial period of one (1) year beginning with the opening date of said market, and this lease shall continue in full force and effect thereafter from month to month until either party shall give sixty (60) days notice in writing to the other party of its intention to terminate this lease, in which case the lease hereby created shall terminate in accordance with such notice." The market opened about April 15, 1935.

The lessor, Supreme Markets, Inc., agreed in the lease not to sell or offer for sale and not to permit any other person, firm or corporation to sell or offer for sale in said store any grocery products, except such as are generally carried by delicatessen departments or have been purchased from the plaintiff.

The rent was to be an amount equal to three per cent of sales made by the lessee up to $3,000 a week and four per cent of sales in excess of that amount, payable at the end of the week. If the total rent payments for the first year shall not equal $7,500, the lessee was to make up the deficiency. The lessee agreed to carry a general line of groceries for sale

at one price to all customers not higher than that asked in other chain stores or markets, and to discontinue any item at the request of the lessor if not suitable for the purpose for which it is offered.

The lease provided in paragraph 16 that if after reasonable notice of breach the lessee fails to perform any obligation therein contained, or for one business day fails to carry on business in its space, the lease shall terminate at the option of the lessor. But paragraph 19 of the lease provided as follows: "Nothing herein contained to the contrary notwithstanding, it is agreed that the lessee shall have the right to continue to operate its business in said demised premises after April, 1936, and the lessor agrees not to give the lessee notice so long as the lessee conducts its business in a good business-like manner, compatible with the name and reputation of Supreme Markets, Inc., and so long as its sales average a minimum of $3,500 (Thirty-five hundred dollars) per week."

The bill alleges that the plaintiff has complied with all the terms of the lease, and has given the lessor no cause to terminate it. But the bill alleges that on August 10, 1950, the lessor by its attorney notified the plaintiff in writing that its tenancy would terminate at the end of October 31, 1950. The bill alleges that all the defendants contend that the provisions in the lease whereby the lessor agreed not to give notice to terminate the lease so long as the conditions therein specified exist are invalid, and that they intend to end the lease and evict the plaintiff.

By amendment to the bill the plaintiff alleges that both defendant corporations were engaged in a joint adventure in executing the lease, and that Supreme Markets, Inc., was agent for Superior Realty Co., Inc., or that the latter is estopped to set up its title against the lease.

The lease was valid, and the term continued until ended by notice as therein provided. *Carlisle* v. *Weiscopf,* 237 Mass. 183. *Straus* v. *Shaheen, Inc.* 310 Mass. 646. *South Street Inn, Inc.* v. *Muehsam,* 323 Mass. 310. The term was not too indefinite, as in *Farris* v. *Hershfield,* 325 Mass. 176.

The demurrer, as amended, states one hundred thirty-nine grounds. In view of the number of grounds, which we deem excessive, we shall discuss only those of substance. See *Hogan* v. *Coleman*, 326 Mass. 770, 772–773.

One ground of demurrer is that the plaintiff has a plain, adequate and complete remedy at law. Doubtless the plaintiff might maintain an action of contract for breach of the covenant not to give notice to terminate the lease. *Berman* v. *Rowell*, 274 Mass. 260, 266–267. But such an action would not give the plaintiff possession. Any right of the plaintiff to hold possession by force would be a perilous one to exercise, and would not prevent the defendants from cutting off heat, water and light so as to make the plaintiff's occupancy impracticable. See *Low* v. *Elwell*, 121 Mass. 309. Without specific performance of paragraph 19 of the lease, in which the lessor agreed not to give notice to terminate so long as certain conditions were performed, the plaintiff as a practical matter could not continue in effective possession of its rights under the lease. If the lessor should give notice to terminate the lease and bring summary process, the lessee could prevail only by specific performance of paragraph 19 of the lease. Even if the lessee might set up an equitable defence to the summary process under G. L. (Ter. Ed.) c. 231, § 31, it might instead at its option bring a bill in equity to restrain the prosecution of the summary process. *Bancroft Trust Co.* v. *Canane*, 271 Mass. 191, 199. *Liberty Mutual Ins. Co.* v. *Hathaway Baking Co.* 306 Mass. 428, 432. Compare *Klein* v. *Commonwealth*, 318 Mass. 592, 594. No remedy at law open to the plaintiff can be said to be plain, adequate and complete. *Lynch* v. *Union Institution for Savings*, 158 Mass. 394.

There are three provisions in the lease for termination by notice. In paragraph 1, after an initial period of one year, either party may terminate the lease by sixty days' notice. In paragraph 16, if after notice of breach the lessee fails to perform any obligation of the lease or for one day fails to carry on business, the lessor may terminate the lease. By paragraph 19, despite anything contained in the lease to the

contrary, the lessor covenants not to give notice to terminate the lease so long as the lessee does certain specified things.

The plaintiff contends that paragraph 19 does not restrict the rights of the lessor under paragraph 16, for if it did the lessor could not terminate the lease for nonpayment of rent. We agree with the contention of the plaintiff in its brief that "the parties must have intended the initial phrase [of paragraph 19], 'Nothing herein contained to the contrary notwithstanding,' to have referred to the absolute right of the lessor to terminate after April, 1936 [in paragraph 1], and not to the conditional right of the lessor to terminate the lease after notice to the lessee of breach of covenant." The construction contended for by the plaintiff seems to us the reasonable one.

The defendants demur on the ground that the limitations in paragraph 19 upon their right to terminate the lease, that notice shall not be given so long as the lessee shall conduct its business (a) in a good business-like manner (b) compatible with the name and reputation of Supreme Markets, Inc., and (c) so long as its sales average $3,500 a week, are void for indefiniteness. These limitations do not seem to us too indefinite for enforcement, taken in connection with the disclosed purposes of the lease, and with evidence of the facts as to the manner in which the plaintiff conducts its business. Obligations expressed no more definitely have been enforced by this court. *Parker* v. *Bridgeport Ins. Co.* 10 Gray, 302, 304. *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123, 131, et seq. *Commissioner of Insurance* v. *Conveyancers Title Ins. & Mortgage Co.* 300 Mass. 457, 468. *Lowell Gas Light Co.* v. *Department of Public Utilities,* 319 Mass. 46, 52.

The defendants demur to the bill on the ground that the lease in paragraph 8 provides that the lessor shall not sell or permit anyone else to sell in the store grocery products, with certain exceptions, the lessor agreeing to buy from the lessee any grocery products carried by the lessor. The defendants contend that these provisions are invalid as creating a monopoly in restraint of trade. But it is settled

that G. L. (Ter. Ed.) c. 93, §§ 1, 2, are to be construed strictly, and do not prohibit such an agreement as is contained in the lease. *Commonwealth* v. *Strauss*, 188 Mass. 229, *S. C.* 191 Mass. 545. *Butterick Publishing Co.* v. *Fisher*, 203 Mass. 122. In *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 472–473, it was said that the statute "applies only to those [agreements] that create or maintain a monopoly in the manufacture, production, transportation, or sale in this Commonwealth of an article or commodity in common use, or that restrain or prevent competition in this Commonwealth in the supply or price of such article or commodity, or that restrain or prevent the free pursuit in this Commonwealth of any lawful business, trade or occupation for the manufacture, production, transportation or sale of such article or commodity." In *Associated Perfumers, Inc.* v. *Andelman*, 316 Mass. 176, 183–184, it was said that "When on considering the contract in the light of the business and situation of the parties and the circumstances with reference to which it was made, it appears that the restraint contracted for is for an honest purpose, is only such as affords a fair protection to the legitimate interests of the party in whose favor it is imposed, and not so large as to interfere with the interests of the public, the restraint is held to be reasonable, and the contract valid." A monopoly, to be such, requires dominance in the market and the power to control prices to the public harm. *Commonwealth* v. *Dyer*, 243 Mass. 472, 486. *Commonwealth* v. *McHugh*, 326 Mass. 249, 261. In the present case the provision assailed is limited to the store in question. The profit of the lessee on grocery products sold to the lessor is limited to three per cent. The lessee agreed in the lease that the retail prices of its merchandise would not be higher than the prices in other chain stores or markets, and agreed to meet any competition by reducing prices. We are unable to see how the purchasing public could be harmed by the provisions of the lease. No monopoly was provided for. Judicial notice may be taken of the fact that the store in question was merely one of many food stores in Boston and even in

Dorchester. Indeed, a provision preventing a lessor from permitting competition with the lessee, much more drastic than the provision in the lease before us, has been sustained. *R. M. Sedrose, Inc.* v. *Mazmanian,* 326 Mass. 578.

So far as the bill is one for a declaration of right under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, it must show the existence of "an actual controversy." We think that the existence of such a controversy is sufficiently stated. *School Committee of Cambridge* v. *Superintendent of Schools of Cambridge,* 320 Mass. 516, 518.

General Laws (Ter. Ed.) c. 214, § 12, requires a plaintiff in equity to state facts briefly and to omit immaterial and irrelevant matters. We think that the bill does not offend in this respect. *Gabriel* v. *Borowy,* 324 Mass. 231, 237. *Sears* v. *Treasurer & Receiver General,* 327 Mass. 310.

On December 8, 1948, by an unsealed instrument other parts of the store were substituted for those leased on March 12, 1935. The defendants demur to the bill on the ground that a sealed instrument cannot be amended by an unsealed one. This is not the law. *Conroy* v. *Toomay,* 255 Mass. 87, 90. *Tashjian* v. *Karp,* 277 Mass. 42, 45–46. *Commonwealth Investment Co.* v. *Fellsway Motor Mart, Inc.* 294 Mass. 306, 314. *Cohen* v. *Homonoff,* 311 Mass. 374, 376. Moreover, the lease in question did not require a seal, and the seal resulting as matter of law from G. L. (Ter. Ed.) c. 4, § 9A, on the lease of March 12, 1935, may be disregarded. *Vigdor* v. *Nelson,* 322 Mass. 670, 674. It is true that by Gen. Sts. (1860) c. 89, § 3, a lease for more than seven years required a "deed" in order to be valid against others than the grantor, his heirs and devisees and persons having actual notice. The successors of that statute (R. L. [1902] c. 127, § 4) and G. L. (1921) c. 183, § 4, and also G. L. (Ter. Ed.) c. 183, § 4 (1932), did not require a deed. Neither did the amendment to the section last cited made by St. 1941, c. 85. When the lease was made on March 12, 1935, no deed was required. Furthermore, this section has no application between the parties to the instrument. *Aronian* v. *Asadoorian,* 315 Mass. 274, 276.

The defendants contend that Superior Realty Co., Inc., was not a proper party. The bill alleges that the defendant Supreme Markets, Inc., represented that it owned the store, although the title stood in the name of Superior Realty Co., Inc., a fact which the plaintiff did not know, but which was known to the agents and officers of both the defendant corporations, who like the stockholders were the same persons. Nothing was said to the plaintiff about the ownership, and the plaintiff spent much money in reliance on the lease. The facts pleaded seem to us to make out a case of estoppel against Superior Realty Co., Inc., which actually owned the store. *Heard* v. *Hall,* 16 Pick. 457, 460. *Bragg* v. *Boston & Worcester Railroad,* 9 Allen, 54, 61–62. *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 291. *Looney* v. *Trimount Theatres, Inc.* 282 Mass. 275. *Vincent* v. *Plecker,* 319 Mass. 560, 561. We think that Superior Realty Co., Inc., was properly made a party defendant.

We do not think that the right to maintain the bill is barred by laches or the statute of limitations. Though fifteen years elapsed since the events which bound the corporate defendants, they resulted at once in property rights of the plaintiff which still exist, and have only recently been denied by the defendants.

The individual defendant Paul J. Cifrino demurs to the bill on the ground that he is not a proper party. He was not a party to the lease. Individually he had no title to the store. He was merely an officer of the defendant corporations. A decree against the corporations or either of them will bind him in his capacity as officer, although he is not a party to the bill. See *Commonwealth* v. *Hudson,* 315 Mass. 335, 347, et seq.; *Attorney General* v. *Dover,* 327 Mass. 601, 608. As to Cifrino we think the demurrer should have been sustained.

The interlocutory decree overruling the demurrer is modified by sustaining it as to the defendant Paul J. Cifrino only, and as so modified is

*Affirmed.*