WEST BROADWAY TASK FORCE *vs.* BOSTON HOUSING
AUTHORITY.

Suffolk. January 5, 1993. - February 24, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Housing. Boston Housing Authority. Laches.*

Certain tenants of a housing development, displaced from their homes by
    what amounted to a written order from the Boston Housing Authority
    to vacate their homes for the purpose of rehabilitation of the premises,
    were entitled to relocation assistance pursuant to G. L. c. 79A. [397-
    400]

Plaintiffs asserting rights for relocation assistance under G. L. c. 79A, pur-
    suant to 1982 and 1987 tenant relocation agreements, were not barred
    by the doctrine of laches, where the first breach of the agreements oc-
    curred in February, 1990, and the plaintiffs sought declaratory and in-
    junctive relief in April, 1990. [400-401]

A housing authority was not excused by fiscal constraints from providing
    financial assistance to certain tenants as mandated by statute or agree-
    ment. [401]

CIVIL ACTION commenced in the Superior Court on Febru-
ary 7, 1975.

A claim for declaratory and injunctive relief, filed on April
27, 1990, was heard by *Guy Volterra*, J., and motions for
severance and for entry of a separate and final judgment
were also heard by him.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Wilbur E. Commodore* for the defendant.

*James M. McCreight* for the plaintiff.

NOLAN, J. The Boston Housing Authority (BHA) appeals
from a judgment of the Superior Court in favor of the West
Broadway Task Force (WBTF) on a claim for declaratory

and injunctive relief regarding relocation assistance.[1] We transferred the case to this court on our own motion. The Superior Court judge ruled that West Broadway tenants were entitled to the benefits provided by G. L. c. 79A (1990 ed.), and that the WBTF's claims concerning the BHA's failure to provide a $200 relocation allowance and a rent abatement or credit were not barred by laches. We affirm.

The facts of this case are undisputed. The BHA owns and operates a public housing development in South Boston known as the West Broadway development. Since 1980, the BHA has worked to renovate the property. The BHA has completed work on "Phase I" and "Phase II" of its redevelopment project and began "Phase IIIA" in January, 1990. In June, 1982, the BHA negotiated an agreement with the WBTF over what relocation assistance would be provided as a result of the redevelopment project. In March, 1987, the parties negotiated a second agreement regarding relocation assistance which did not explicitly rescind the previous agreement.

Under both the 1982 and 1987 relocation agreements, tenants who were required to relocate because of the redevelopment were entitled to specified assistance from the BHA. These tenants were entitled to reimbursement for "all reasonable and documented costs for moves" that were approved by the BHA, or the tenant households could elect to "receive fixed payments according to a BHA schedule, rather than such reasonable and documented costs." Each tenant household was also entitled to receive "a one-time only payment of $200 . . . to cover the cost of setting up a new household,"

---

[1] This action, a class action for declaratory and injunctive relief on behalf of those members of the class subject to relocation due to renovations at the BHA's West Broadway development, began in the Superior Court Department as part of Armando Perez *vs.* Boston Hous. Auth., Suffolk Superior Court No. 17222. (See *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703 [1980].) A judge in the Superior Court issued a memorandum of decision and order in favor of WBTF on December 13, 1990. On January 16, 1991, WBTF filed a motion for entry of separate judgment on the West Broadway relocation, and that motion and a joint motion to sever the claims were allowed on April 25, 1991. Judgment entered on May 2, 1991.

and was to be offered "rent abatements or credits" of two months' rent determined as of the date the household moved to temporary housing. The promise of rent abatements or credits was reinforced by a separate agreement executed in 1982.

Problems arose in 1989 when the BHA notified the WBTF of its intention to develop a standard relocation policy for public housing rather than continue to negotiate separate agreements for each development. After reviewing comments submitted by the WBTF and other tenant task forces, the BHA issued its "Residential Relocation and Rehousing Policy" (RRP) in June, 1989. In contrast to the 1982 and 1987 relocation agreements, the RRP provides neither a one-time $200 payment to cover the cost of establishing a new household nor the two-month rent abatement or credit. Instead, the RRP offers residents only a choice between reimbursement of actual, reasonable moving costs or a fixed payment based on a schedule of moving costs per number of bedrooms, developed by the BHA and updated annually.

WBTF argues first that the BHA's relocation policy, at least as it applies to West Broadway, must adhere to the provisions of c. 79A. Under G. L. c. 79A, § 7 (I) (B) (1990 ed.), a qualified tenant is entitled either to reimbursement of documented, reasonable moving expenses or "a moving expense allowance not to exceed three hundred dollars" based on the prevailing Department of Public Works (DPW) fixed payment schedule, plus "a dislocation allowance of two hundred dollars." Unlike the BHA's fixed-payment schedule which is based on the number of bedrooms moved, the DPW's schedule is determined by the number of rooms from which the tenants will be displaced including bedrooms, living rooms, dining rooms, and kitchens. Moreover, the DPW includes the $200 dislocation allowance in its calculation of the fixed payments. Second, the WBTF argues that the BHA cannot unilaterally abrogate the 1982 and 1987 relocation agreements, and, consequently, West Broadway tenants required to relocate because of the renovation work are entitled to the assistance promised by the BHA in those agreements. The BHA,

on the other hand, argues that c. 79A does not apply to the relocation of West Broadway tenants who are only temporarily displaced as a result of a redevelopment program. Furthermore, the BHA claims that the WBTF, having slept on its rights under the 1982 and 1987 relocation agreements, is now barred under the doctrine of laches from asserting those rights against the BHA.[2]

We hold that (1) G. L. c. 79A does apply to the relocation of West Broadway tenants displaced as a result of the BHA's redevelopment program, and (2) the WBTF's claims under the 1982 and 1987 relocation agreements are not barred by laches.

1. *Relocation assistance.* The Commonwealth provides a comprehensive scheme for providing relocation assistance to persons displaced from their homes by the actions of a public agency. G. L. c. 79A. There are, however, two threshold requirements before relocation assistance will be provided. First, the public agency[3] action which displaces residents must be either the acquisition of real property or the issuance of an order to vacate real property for the purposes of rehabilitation, or demolition, or other improvement. G. L. c. 79A, §§ 3, 7. Second, the recipient of the relocation assistance must be a "displaced person" within the meaning of the statute.[4] The judge ruled that the BHA's West Broadway ten-

---

[2]In this appeal, the BHA claims for the first time that the two relocation agreements were negotiated exclusively for "Phase I" and "Phase II" of the redevelopment, and, therefore, it would be "inequitable" to hold that the agreements are binding on the BHA with regard to "Phase IIIA." The judge found that the BHA never claimed that the agreements were invalid, revoked, or repudiated; consequently, the BHA may not properly assert these defenses for the first time on appeal without showing that it was prevented from making these claims at trial. *Robinson* v. *Trustees of N.Y., N.H. & H.R.R.,* 318 Mass. 121, 134 (1945), and cases cited. BHA makes no such showing.

[3]The BHA does not dispute that it is a "[p]ublic agency" within the meaning of G. L. c. 79A, § 1.

[4]In G. L. c. 79A, § 1, a "[d]isplaced person" is defined as "any person who, on or after the effective date of this act, moves from real property, or moves his personal property from real property, as a result of the acquisition of such property or the receipt of a written order to vacate real prop-

ants were displaced as a result of the BHA's "acquisition" of the property, and, consequently, the BHA is required to provide relocation assistance pursuant to c. 79A. This ruling is clearly erroneous. The BHA did not "acquire" the West Broadway property within the meaning of § 1 of c. 79A, because the property was already owned by the BHA.[5] Indeed, WBTF concedes that the judge erred in concluding as he did. This does not mean, however, that the judge erred in finding that c. 79A applies to "Phase IIIA" of the West Broadway redevelopment project.[6] A judgment which is correct on the facts will be upheld even though the stated ground for the judgment is unsound. *Greeley* v. *Zoning Bd. of Appeals of Framingham*, 350 Mass. 549, 551 (1966), and cases cited. On the facts of this case, we hold that the tenants at West Broadway faced what amounted to a written order from the BHA to vacate the premises for the purpose of rehabilitation, and, therefore, those tenants who were displaced as a result are entitled to relocation assistance pursuant to c. 79A.

Technically, the BHA is correct when it claims that it never issued a "written order to vacate" to its tenants at West Broadway. Instead, all the tenants relocated in response to notice of the forthcoming rehabilitation work and their rights under the BHA's RRP. The BHA is incorrect, however, when it claims that its actions fall short of triggering the application of c. 79A. Only the most sterile, pedantic reading of c. 79A would deny relocation assistance to tenants who chose to relocate *after* receiving notice that they are re-

---

erty, for a program or project undertaken by an agency or person required to provide relocation assistance under this act."

[5]General Laws c. 79A, § 1, defines "[a]cquisition" as "the taking of real property by eminent domain, negotiated sale, or other means, by or for any public agency, or by any person or agency authorized to take by eminent domain, or a corporation established under the provisions of chapter one hundred and twenty-one A."

[6]The BHA does not dispute that "Phase IIIA" of the West Broadway redevelopment project is for "rehabilitation . . . or other improvement" purposes within the meaning of G. L. c. 79A, § 7. Rather, the BHA claims that no occupants were displaced by the issuing of a written order to vacate as also required by c. 79A, § 7.

quired to leave their homes but *before* receiving an actual order to leave. We decline to give such a vacuous interpretation to a statute.

The notice of relocation rights under the RRP which was sent to the tenants at West Broadway was tantamount to a written order to vacate. A tenant who failed to sign a relocation-rehousing agreement was subject to eviction. Similarly, the 1982 and 1987 relocation agreements state that tenants who fail to move after receiving notice of assignment to temporary housing are subject to legal action. Thus, since these tenants faced eviction for failure to comply with the BHA's temporary housing assignments, the notice of the new relocation policy for the "Phase IIIA" rehabilitation work was in effect a "written order to vacate" for the purpose of rehabilitation.[7]

This decision comports with the objectives of the statute as a whole. Regulations of the Department of Community Affairs (DCA) state that relocation assistance shall be provided to "all persons displaced as a result of public action . . . either by property acquisition or by the issuing of a *notice* to vacate" (emphasis added). 760 Code Mass. Regs. § 27.01 (1), (3) (1986). The statutory requirements of c. 79A are not formalistic but functional. The emphasis is on agency action which results in the displacement of tenants rather than the formal nature of that action. If displacement results from acquisition by sale or "other means," G. L. c. 79A, § 1, or because of rehabilitation, demolition, or "other improvement," §§ 2 and 7 (I) (A), then clearly the emphasis is on

---

[7]The BHA claims that c. 79A's relocation benefits do not apply to the tenants in this case for whom the BHA was legally obligated to provide temporary public housing. Since the tenants were never deprived of their public housing rights, BHA argues that they were never "displaced" as a result of a written order to vacate. This argument is without merit. A person is displaced for purposes of relocation assistance when he or she "moves from real property" or "moves his personal property from real property, as a result of . . . a written order to vacate real property." G. L. c. 79A, § 1. The statute does not condition relocation benefits on the loss of public housing rights nor does it make an exception for those requiring only temporary housing.

the result of the agency's action, the displacement of tenants, and not on the manner by which they were displaced.[8] Indeed, as the WBTF argues, the bureau of relocation of the DCA must first determine if an agency is required to provide relocation assistance before notice to vacate can be sent. G. L. c. 79A, §§ 2, 6. To condition assistance on whether the agency can order the tenants to vacate puts the cart before the horse.

2. *Laches.* The doctrine of laches operates in equity as an affirmative defense against a plaintiff whose unreasonable delay in bringing a claim results in some injury or prejudice to the defendant. *Shea* v. *Shea,* 296 Mass. 143, 148-149 (1936). Therefore, the BHA shoulders the burden of proving that the WBTF waited for an unreasonably long period before asserting its rights under the 1982 and 1987 relocation agreements *and* that its delay induced a detrimental change in the BHA's position or injuriously affected the BHA's legal rights. *Id.* at 149. Generally, laches is a question of fact, *Tzitzon Realty Co.* v. *Mustonen,* 352 Mass. 648, 650 (1967), and a finding of fact by a Superior Court judge will not be overturned unless clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).

The judge found that the WBTF acted promptly to preserve its rights without prejudice to the BHA. We see no error in the judge's determination. The BHA argues that the WBTF had several years to assert its rights under the two relocation agreements and its failure to do so should bar it from asserting those rights now. This argument misconceives the operation of laches. It is well established in the Commonwealth that laches does not operate to bar a claim simply because the events which established rights in the plaintiff occurred long ago. See, e.g., *Elm Farm Foods Co.* v. *Cifrino,* 328 Mass. 549, 557 (1952) (when property rights have only recently been denied, claim on lease not barred by laches

---

[8]In addition, a 1973 amendment to G. L. c. 79A, § 2, substituted the phrase "displacing agency" for "taking agency." St. 1973, c. 863, § 2. Again, what is important is not the type of agency action but the results of that action.

even though parties entered into lease fifteen years earlier). It is axiomatic that a plaintiff has no claim to bar until his rights have been denied and liability results. Thus, laches is available as an affirmative defense only after the plaintiff has unreasonably delayed in vindicating rights that have been denied. *Id.* Notice of the BHA's new relocation policy concerning "Phase IIIA" redevelopment was sent to West Broadway tenants in January, 1990. The breach of the 1982 and 1987 relocation agreements, the Superior Court judge found, occurred in February, 1990, when the first relocation under the new policy took place. Since the WBTF sought declaratory and injunctive relief in April, 1990, there was no unreasonable delay. Moreover, because the WBTF and the BHA had met several times in 1989 to negotiate relocation rights, the judge was justified in concluding that, even before the BHA implemented the new relocation policy, it was well aware of the WBTF's intent to assert its rights in opposition. Since the BHA had adequate notice of the WBTF's intention to exercise its rights, any delay in filing a claim based on those rights did not put the BHA at a disadvantage.

Lastly, the fiscal constraints cited by the BHA provide no excuse for its failure to provide assistance mandated by statute or agreement. *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 727-728 (1980) (BHA must abide by ordinary substantive law of Commonwealth). The impact on the BHA's other developments is likewise irrelevant because the relocation agreements were negotiated specifically for this development alone. *Healey* v. *Commissioner of Pub. Welfare, ante* 18, 28 (1992) (adverse impact on other programs cannot excuse agency from compliance with statute).

*Judgment affirmed.*