BEVERLY PAGE *vs.* EDWARD G. LeROUX, JR.,
& others.[1]

No. 95-P-1811.

Middlesex. January 10, 1997. - October 16, 1997.

Present: PERRETTA, DREBEN, & JACOBS, JJ.

*Limitations, Statute of. Practice, Civil,* Declaratory proceeding. *Declaratory
Relief. Partnership,* General partner, Limited partnership.

In an action brought by a partner seeking a declaration as to her ownership
interests in the partnership, the statute of limitations for such a contract
claim did not begin to run until an actual controversy arose between the
plaintiff and the other partners; where the plaintiff filed her complaint four
months after the precipitating controversy occurred, the complaint was not
barred by the six-year statute of limitations. [710-712]
In an action brought by a partner seeking a declaration as to her ownership
interests, to which she had succeeded in the settlement of a suit brought
against her husband's estate, the judge correctly relied on the written
agreement of the originating partners and correctly declared the plaintiff's
ownership interest following the death of her husband, who was one of the
originating partners. [712-713]

CIVIL ACTION commenced in the Superior Court Department on
December 28, 1992.

The case was heard by *Julian T. Houston,* J.

*Alan R. Hoffman* for the defendants.

*Philip M. Cronin* for the plaintiff.

JACOBS, J. On December 28, 1992, the plaintiff filed a
complaint in the Superior Court seeking a declaration of her
ownership interest in the Belle Isle Limited Partnership (Belle
Isle), of which the defendants are general partners. Belle Isle

---

[1]Albert F. Curran and Summit Investment and Development Corporation
(Summit). LeRoux, Curran, and Summit are general partners of Belle Isle
Limited Partnership.

had been formed in March, 1986, by Albert F. Curran, Edward G. LeRoux, Jr., and the plaintiff's husband, George Page, pursuant to a partnership agreement which provided for three classes of partners: general partners, original limited partners, and investor limited partners. Each of the originating partners contributed one millon dollars to the partnership in exchange for a one percent interest as a general partner and a nine percent interest as an original limited partner. The remaining seventy percent ownership interest in the partnership was to be sold in shares to investor limited partners. A major project of the partnership was the purchase of the Suffolk Downs race track, which it accomplished in June, 1986. George Page died in August, 1986, before any shares had been acquired by investor limited partners.

The plaintiff formally acquired George Page's interest in the partnership in June, 1989, pursuant to the settlement of a suit she had brought against his estate. Between the time of George Page's death and the filing of the plaintiff's complaint, there occurred several amendments of the partnership agreement including one in October, 1986, purporting to characterize the interest once held by George Page as that of a "special limited partner" and another in December, 1987, admitting a new partner, Summit Investment and Development Corporation (Summit), to a one percent general partnership interest and a nine percent original limited partnership interest. During that same period, sales of ownership interests in the partnership were made to several investors who acquired part of the seventy percent ownership interest originally set aside for the class of investor limited partners. The governing partnership documents provide that any profits, losses, or distributions generally attributable to that class but not specifically "allocable or distributable" to existing investor limited partners are to be "shared by the general partners and the original limited partners in proportion to their respective partnership interests." In essence, the benefits and burdens attributable to the unsold portion of the seventy percent set aside for sale to the investor limited partner class were to accrue to the general and original limited partners.

The plaintiff, in her complaint, seeks a declaration that she is entitled to an allocation of that unsold portion based on her acquisition of her late husband's interest. In their answer, the

defendants deny such entitlement and raise the affirmative defenses of laches and the statute of limitations. Based upon certain agreed facts and evidence introduced in a bench trial, the judge determined that the plaintiff's action was not time-barred and ordered a judgment declaring that the plaintiff is entitled to a specified portion of the unsold investor limited partnership shares. The defendants appeal from an ensuing amended judgment. See note 3, *infra.* We affirm on the basis of the case presented and decided below without depending in any respect on G. L. c. 108A or G. L. c. 109, governing ordinary partnerships and limited partnerships respectively, neither of which is relied on by the parties. See *Melrose Hous. Authy.* v. *New Hampshire Ins. Co.*, 24 Mass. App. Ct. 207, 212 (1987).

1. *Statutes of limitations and declaratory actions.* The defendants claim the judge erred in concluding that the underlying dispute concerns a breach of contract and that the applicable six-year statute of limitations does not bar the plaintiff's complaint. On the evidence, we discern no error in those conclusions for the reasons set forth in the margin.[2] We affirm,

---

[2] The controversy before the court involves an interpretation of the effect, under the governing partnership agreement, of the death of one of the originating partners. The issues raised involve interpretation of the contractual aspects of that governing document. To the extent a limitations bar may be implicated, it is that of the six-year statute of limitations applicable to contractual disputes. The defendants' attempt to have the dispute treated as a tort action involving a claimed breach of fiduciary obligation is as unavailing with us as it was with the judge. The claim of laches correctly was rejected by the judge and, in any event, was not argued to us. It, therefore, is waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Even if we assume that the recharacterization of George Page's interest after his death constitutes a breach of contract occurring more than six years prior to the filing of the complaint, the plaintiff's action nevertheless would not be barred due to the operation of the discovery rule, which the defendants have conceded is applicable to this case. See *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Engrs. Inc.*, 396 Mass. 818, 824 (1986) (indicating the discovery rule is applicable to certain contract actions); *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 106 (1980). Under that rule, accrual of the plaintiff's cause of action did not occur until she knew or reasonably should have known that she had suffered harm from the recharacterization. See *Hendrickson* v. *Sears*, 365 Mass. 83, 89-90 (1974), and cases cited. Stated otherwise, it is a "state of 'blameless ignorance'" which tolls the statute of limitations." *Gore* v. *Daniel O'Connell's Sons*, 17 Mass. App. Ct. 645, 648 (1984), quoting from *Urie* v. *Thompson*, 337 U.S. 163, 170 (1949).

In a finding supported by the evidence and not clearly erroneous, the judge concluded that the plaintiff "credibly testified that she did not learn that her

however, on an additional basis, that of the inapplicability, in the circumstances, of ordinary limitations analysis to the plaintiff's complaint for declaratory relief based upon the date of an alleged breach of contract.

In her complaint, the plaintiff seeks merely a declaration as to her "ownership interests in the partnership." Pending such determination, she sought to enjoin the partnership from distributing any proceeds resulting from the sale of any partnership interests and from transferring any partnership property out of the ordinary course of business. Although alleging that the partnership had "wrongfully and intentionally mischaracterized her partnership interest . . . resulting in her not benefitting from the undistributed investor limited partner interests," she did not claim that she had been by-passed with respect to any actual distribution of funds or property or that she suffered any past damages deriving from George Page's former partnership interest being recast as that of a "special limited partner." The complaint reasonably may be read only[3] as seeking a formal declaration of the plaintiff's partnership interests so as to permit her to participate appropriately in any future distributions attributable to the unsold portion of investor limited partner shares. Construing the complaint as implicating contractual rights, we discern no traditional theory of damage being presented and calling for a determination of the amount of property or money necessary to put the plaintiff in the same

husband's interest in the partnership had been modified until August 1992." The defendants contend that the alleged breach of contract which should have alerted the plaintiff, under the discovery rule, to the existence of a cause of action was the October, 1986, amendment by which her late husband's interest was recharacterized as that of a "special limited partnership." Nothing in that amendment defined the nature of this designation or indicated that the Page interest in the unsold investor limited partner shares had been affected. Even if the plaintiff then should have been aware of this amendment, a conclusion not clearly supported by the evidence and apparently not reached by the judge, there is no indication that the mere unexplained and undefined redesignation reasonably should have been construed as then adversely affecting the plaintiff's interest. The vague allusions to the amendment made "in late 1986 or early 1987" by an attorney representing her in her claim against the estate are not sufficient to support a conclusion that a lay person such as the plaintiff should have been alerted to a breach of contract or a ground of controversy before late December, 1986.

[3]The complaint contains an averment that Summit did not pay adequate consideration for its interest. This claim was not accompanied by any relevant claims for damages or other permanent relief.

position she would have been in if her claimed contract had been fulfilled. See *Cragin* v. *Jones*, 283 Mass. 474, 479 (1933). We recognize that "declaratory procedure cannot be employed to circumvent statutes of limitations." *Second Church in Dorchester* v. *Boston*, 343 Mass. 477, 479 n.1 (1962). See also *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 352 (1992). Here, however, neither the pleadings nor the evidence establishes any past injury to the plaintiff traceable to a breach of contract or other source. Instead, there is evidence of a mischaracterization of the plaintiff's partnership interests which could work to her detriment in the future. In such circumstances, a statute of limitations is not operative until an actual controversy has arisen between the parties creating a right to secure a judicial declaration pursuant to G. L. c. 231A. See *Elm Farm Foods Co.* v. *Cifrino*, 328 Mass. 549, 557 (1952). So long as the partnership agreement remained partially executory and no damaging breach of contract had befallen the plaintiff pursuant to that agreement, the statute of limitations in her declaratory action did not begin to run until an actual controversy arose. See 1 Anderson, Actions for Declaratory Judgments § 341 (2d ed. 1951 & Supp. 1972). That precipitating controversy did not occur until the plaintiff attended a meeting in August, 1992, with LeRoux, at which he informed her she owned only a ten percent interest and rejected her contention that she had acquired George Page's previous interests in the undistributed investor limited partner shares. Her complaint was filed approximately four months later.

2. *The Page partnership interest.* Relying on the written agreement of the originating partners, the judge properly concluded that upon George Page's death, his estate, and in turn the plaintiff, acquired his original nine percent limited partnership interest including the right to a pro rata share of any future profits, losses, or distributions attributable to unsold investor limited partnership units. The judge also correctly interpreted the partnership documents to work a conversion of George Page's one percent general partnership interest upon his death into a limited partnership interest without right to manage or to share in the undistributed investor limited partnership units. Finally, the judge correctly accounted for Summit's admission

to the partnership as a general and original limited partner.[4]

*Judgment affirmed.*

---

[4]The judge first ordered a judgment declaring that at the time of George Page's death, the holder of his interest became entitled to a ten percent limited interest in Belle Isle but only a $9/29$ interest in the unsold investor limited partner shares. He also concluded that Curran and LeRoux then each held a $10/29$ interest in those unsold shares.

After a motion for clarification of the original judgment, the judge ordered an amended judgment essentially reducing the plaintiff's share of profits and losses attributable to unsold investor limited partner units to account for the admission of Summit to Belle Isle. He concluded that while he had determined in his original decision that the admission of Summit to general and original limited partner status did not improperly dilute the George Page interest, he had not properly taken the Summit interest into account in computing the plaintiff's interest in the unsold investor limited partner shares. Accordingly, he amended the judgment to reflect the effect of the admission of Summit by declaring that the plaintiff's interest in the unsold investor limited partner shares was $9/39$. The plaintiff filed a notice of appeal, but later withdrew it. We nevertheless have considered the questions of the propriety and effect of Summit's admission, see *Welsch* v. *Palumbo*, 321 Mass. 399, 400 (1947), and discern no error in the judge's decision as to these issues.