# United States Court of Appeals
## For the First Circuit

No. 07-2700

PUERTO RICANS FOR PUERTO RICO PARTY; NELSON ROSARIO-RODRÍGUEZ,
Electoral Commissioner of the Puerto Ricans for Puerto Rico
Party,

Plaintiffs, Appellants,

v.

JUAN DALMAU, Electoral Commissioner of the Puerto Rican
Independence Party; PUERTO RICAN INDEPENDENCE PARTY; GERARDO
CRUZ-MALDONADO, Electoral Commissioner of the Popular Democratic
Party; EDWIN MUNDO-RIOS, Electoral Commissioner of the New
Progressive Party; RAMÓN E. GÓMEZ-COLÓN, President of the
Commonwealth Elections Commission; WALTER VÉLEZ, Secretary of the
Commonwealth Elections Commission,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District  Judge]

Before

Lynch, Chief Judge,
Selya, Circuit Judge,
and Schwarzer,[*] District Judge.

---

[*]    Of  the  Northern  District  of  California,  sitting  by
designation.

Juan José Nolla Acosta with whom Nelson Rosario-Rodríguez was on brief for appellants.

Jorge Martínez-Luciano for appellee Gerardo Cruz-Maldonado, and Ramon L. Walker-Merino for appellee Walter Vélez, with whom Law Offices of Pedro Ortiz Alvarez, PSC was on brief.

---

October 6, 2008

---

LYNCH, **Chief Judge**.  This suit alleges abuse and uneven application of certain electoral processes in Puerto Rico.  The plaintiffs are the Puerto Ricans for Puerto Rico Party, now a recognized party in the Commonwealth of Puerto Rico, and its Electoral Commissioner, Nelson Rosario-Rodríguez (collectively, "PPR" or "plaintiffs").  In September 2007, they brought suit in federal court under, inter alia, 42 U.S.C § 1983 against the Puerto Rico Commonwealth Electoral Commission ("Commission"), its Commissioners, and another political party.

The suit challenges the Commission's treatment of signatures submitted by the Puerto Rican Independence Party ("PIP") in December 2004 to the Commission.  The signatures were submitted in furtherance of PIP's effort to maintain its status as a recognized political party in the Commonwealth by becoming a "party by petition" after PIP failed to maintain its status as a "principal party" because of an insufficient showing in the November 2004 gubernatorial election.  See P.R. Laws Ann. tit. 16, § 3101(1).  Under Puerto Rican law, the Commission is "responsible for planning, organizing, structuring, directing and supervising the electoral body and all electoral procedures that govern any election to be held in Puerto Rico." Id. § 3013.  The Commission thereby controls the conduct of elections and party certification in Puerto Rico.  The Commission also has "original jurisdiction . . . to consider, take cognizance of and resolve any

-3-

matter or controversy of an electoral nature," id. § 3015, and so exercises significant authority over the adjudication of electoral disputes. In 2004, the three principal parties, including the PIP, controlled the Commission because they were the only recognized island-wide parties at the time of the 2004 election. PPR's suit alleges that the Commission impermissibly favored the PIP and disfavored the PPR in the matters raised in this federal case.

The district court concluded that PPR was essentially attempting to re-litigate the same challenge to PIP's attainment of party by petition status that had already been determined in 2006 by the Supreme Court of Puerto Rico. Partido Acción Civil v. Partido Independentista Puertorriqueño (PAC v. PIP), 2006 TSPR 193 (P.R. 2006). The district court dismissed the complaint on the bases of the Rooker-Feldman and res judicata doctrines and awarded fees against PPR. Puerto Ricans for P.R. Party v. Dalmau, 517 F. Supp. 2d 604 (D.P.R. 2007). In so holding, the court relied on an untranslated Spanish language version of the Puerto Rico Supreme Court opinion. On appeal, we have been provided with an English version of that opinion. After review of the English translation, we conclude the district court should not have dismissed the case or awarded fees. We vacate and remand for further proceedings.

I.

We give some pertinent background facts which are undisputed and are needed to understand the issues in the case. We also draw inferences in plaintiffs' favor, as the case was dismissed on the allegations of the complaint.

A.      The November 2004 Election

This litigation has its historic origins in the November 2, 2004 elections in Puerto Rico for local, Commonwealth, and federal offices. But the litigation itself concerns PPR's allegations in the wake of that election that PIP likely committed fraud in submitting signatures on petitions to re-register, abetted by the irregular and differential procedures used by the Commission.

Every official political party in Puerto Rico is entitled to an Electoral Commissioner seat on the Commission. The Electoral Commissioner acts as a party representative. The President of the Commission[1] and the Electoral Commissioners together comprise the Commission's voting members. Political parties may attain official recognition (and therefore a seat on the Commission) through several processes. Under Puerto Rican law, a political party that obtains more than 5% of the gubernatorial vote cast in the election

---

[1]      The President of the Commission, who serves as its Executive Officer, is nominated by the party whose candidate for Governor obtained the most votes in the immediately preceding elections. P.R. Laws Ann. tit. 16, § 3005. The Electoral Commissioners then vote on the proposed candidate. Id.

becomes one of the "principal parties" of Puerto Rico. P.R. Laws Ann. tit. 16, § 3101(1) (defining principal party).

Becoming a principal party is important because principal parties are automatically placed on the ballot for the next election and are entitled to additional offices within the Commission. The three parties obtaining the largest number of votes in the previous election are each entitled to a seat as a Vice-President of the Commission, who has a voice but no vote. See id. § 3005. Under the supervision of the President, the Vice-Presidents help oversee and carry out the work of the Commission. See id. § 3007. The Vice-Presidents are paid by the Commonwealth and are entitled to support staff. Id. § 3005. Parties are also entitled to use Commonwealth resources for their campaign expenses. Id. § 3114.

A party may also become a principal party if it obtains 3% of the straight-ticket ballots or 7% of the party symbol vote cast on the gubernatorial ballot. Id. § 3101(1). If the party fails to meet any of these requirements, it can alternatively register as a "party by petition." To become a party by petition, the party must register on or before June 1 of the election year by filing notarized petitions containing voters' signatures in a number equal to no less than 5% of the total votes cast for governor in the previous election. Id. § 3101(3). Each petition must be signed and sworn to before a notary public and filed with the Commission within seven days after notarization. Id. §§ 3101(3), 3102.

At the time of the 2004 election, the Popular Democratic Party ("PDP"), the New Progressive Party ("NPP"), and PIP were the three principal parties. PIP, with the Commission and its officers, collectively are the defendants here.[2] By contrast, PPR, the plaintiff here, had not then become an official party and therefore had no representation on the Commission. Rather, during the time preceding the November 2004 election and continuing during the Commonwealth court litigation from 2004 to 2006 (described below), supporters of what would become the recognized PPR party were members of at least two "citizen associations," the first known as the Civil Action Party ("CAP") and the second also known as PPR (a predecessor organization to the plaintiff in the instant suit). The PPR itself was not formally recognized as a political party until May 2007.

As said, PIP's gubernatorial candidate obtained only 2.67% of the vote in the 2004 election, thereby failing to meet the statutory requirements to maintain PIP's status as a principal party. The election between the top two candidates for governor, however, resulted in a recount that was not resolved until December 2004. A party which fails to maintain its status as a party

_____

[2] Defendant Juan Dalmau is the Electoral Commissioner of PIP; Defendant Gerardo Cruz-Maldonado is the Electoral Commissioner of PDP; Defendant Edwin Mundo-Rios is the Electoral Commissioner of NPP; Defendant Ramón E. Gómez-Colón is President of the Commission; and Defendant Walter Vélez is the Secretary of the Commission. Of the five Defendants, only Cruz-Maldonado of PDP and Vélez ever appeared. PIP never appeared.

altogether must return any equipment or property of the Electoral Fund to the Commission. P.R. Laws Ann. tit. 16, § 3118.

On November 5, 2004, PIP submitted a letter to the Commission informing the Commission that it had failed to obtain enough votes to retain its status as a principal party and requesting authorization to re-register for the 2008 election through the party by petition process. On November 7, 2004, the Electoral Commissioners of PDP, NPP, and PIP met and authorized PIP to commence gathering signatures to register as a party by petition for the 2008 election.

PPR's core allegation is that the Commission's actions facilitated, accepted, and helped to cover up likely fraud by the PIP in conducting its re-registration, thus favoring the PIP while taking actions disfavoring the PPR.[3] PPR's complaint alleges PIP represented that it had gathered 43,000 signatures during the weekend of November 12-14, 2004 despite a massive rainstorm in Puerto Rico that led the Commonwealth to declare a state of emergency. PPR alleges that the onerous administrative tasks associated with verifying the petitions means that PIP could not have obtained so many petitions in those few days without "emptying the lists." "Emptying the lists" appears to be a reference to a

---

[3] PPR also recounts its view that by allowing PIP to register beginning in November 2004, the Commission permitted PIP to use computers and equipment belonging to the Commission, including providing access to the master voting records for Puerto Rico.

fraudulent use of master voter lists retained by the Commission, which "include[] every data item about every voter" to copy the signatures of voters. PPR alleges that "it is physically impossible to gather and process as many signatures as PIP claims to have . . . processed in those three days" and therefore concludes that "[t]he PIP did not gather enough valid signatures to become a registered party."

PPR contends that because PIP was given access to the Commission's master voting records, which contain voters' signatures, PIP likely exploited this opportunity to falsify petitions by copying those signatures. Although PPR requested access from the Commission to PIP's petitions in order to have the signatures evaluated by an expert, the Commission "stonewalled" and did not give PPR such access.

We describe below the later events involving the Commission that led to this filing of this lawsuit, including allegations of direct harm resulting to the PPR. We pause to describe the interim litigation in the Commonwealth courts.

B.      Litigation in the Commonwealth Courts

We provide a brief background of the proceedings in the Commonwealth courts as outlined in the December 2006 Puerto Rico Supreme Court decision in PAC v PIP.

Puerto Rican law provides a procedure for reviewing Commission decisions in the Puerto Rico courts. P.R. Laws Ann. tit.

16, § 3016a. Sometime in November 2004 after the election, CAP and PPR filed suit in Puerto Rico's Court of First Instance, Superior Part of San Juan, requesting the repeal of the Commission's decision authorizing the PIP to seek re-enrollment. The complaint also sought an injunction to forbid PIP from using public funds in the re-registration drive. That initial Commonwealth court suit[4] ultimately resulted in a preliminary injunction on December 2, 2004 ordering PIP to cease its use of public funds and use of almost all equipment purchased or leased with Electoral Fund subsidies.

CAP also filed another complaint[5] on November 22, 2004, docketed as KPE-04-3623, challenging the Commission's authorization of PIP's re-registration, a case which ultimately reached the Puerto Rico Supreme Court and resulted in the December 2006 PAC v. PIP opinion. The Court of First Instance determined that the issue presented was whether the Commission had violated Section 8.3 of the Regulation of Enrollment of Parties by Petition, which prohibits

---

[4] That initial case was docketed as KPE 04-3481 in the Court of First Instance. The Court of First Instance initially determined that CAP needed first to exhaust its administrative remedies before seeking review by the court and dismissed the complaint. Following CAP's motion for reconsideration, the Court of First Instance agreed to address only the claims regarding equal treatment and use of public funds, as the remaining issues in the electoral review in the other Commonwealth case.

[5] The predecessor group PPR initially was a party in the second Court of First Instance matter but withdrew its claim after the court found a conflict of interest because CAP and PPR were represented by the same attorneys. There is no evidence in the record as to whether the dismissal was without prejudice.

-10-

registration as a party by petition prior to December 31 in an election year. The Court of First Instance affirmed the finding of the Commission, concluding that it had validly interpreted its regulations. The Puerto Rico Intermediate Appeals Forum then affirmed the ruling on the regulation issued by the Court of First Instance.

Finally, on December 29, 2006, the Puerto Rico Supreme Court reviewed and affirmed the appeals court's decision on certiorari. PAC v. PIP, 2006 TSPR 193. It upheld the appeals court's refusal to consider claims outside of those related to the Commission's compliance with the regulation, since these were the only issues properly before the Court of First Instance. More specifically, the Puerto Rico Supreme Court considered Section 8.3 of the Regulation of Enrollment of Parties by Petition and found that even if the Commission had violated its own regulation in authorizing the re-registration of PIP, that regulation was contrary to the intent of the Puerto Rico legislature in drafting the electoral law. Therefore, the Supreme Court concluded, the Commission did not err in permitting the PIP's certification. The Puerto Rico Supreme Court decision was thus not concerned with whether the signature drive by the PIP to become a party by petition was conducted in a fraudulent manner, with the Commission's abetting that conduct.

C.	PPR's Registration Leading to This Federal Court Complaint

Beginning in January 2005, and continuing after the decision of the Puerto Rico Supreme Court was issued in December 2006, PPR sought its own registration as a party by petition. Although 97,000 signatures were required to register, PPR ultimately was forced to gather 113,000 signatures because 16,000 of its signatures were disqualified. PPR alleges that these 16,000 signatures were improperly voided by the Commission. The Commission voided most of the signatures for two articulated reasons. It said 6,700 signatures were invalid because the same signatories had previously endorsed the PIP. It also said 6,500 signatures were "incompatible" with the signatures in the official records of the Commission. PPR alleges the Commission denied its request for access to the documents necessary to evaluate these determinations.[6] PPR eventually became certified in May 2007. PPR alleges that it would have been certified "sometime in late 2006" if not for the Commission's actions.

On September 13, 2007, PPR learned for the first time that the Commission Secretary's office had granted physical custody of the PIP petitions, including those with the challenged signatures,

---

[6]	PPR also sought access to the process by which its petitions were reviewed in a separate civil suit against the Commission and its Electoral Commissioners in federal district court. This suit was dismissed in November 2006. The district court directed PPR first to continue pursuing its remedies in Commonwealth court. Civil Action Party v. Gracia-Morales, No. 05-2064 (D.P.R. Nov. 29, 2006).

-12-

to the PIP.  This action by the Commission, PPR contends, violated the law and impeded its ability to compare at least the 16,000 PIP signatures against the master list.  It also was in contrast to the Commission's refusal to give the PPR access to signatures.

## II.

PPR's instant federal complaint was filed on September 19, 2007, and was sought to be amended on October 11, 2007.  In an effort to prevent destruction of possible evidence of fraud in the ballots that the Commission had turned over to PIP, PPR sought a Temporary Restraining Order from the federal court on September 19, 2007.  The district court denied the request on September 19 without a hearing and without any filing by defendants.  The order sua sponte instructed the PPR to show cause by October 1 why its actions should not be dismissed, although defendants had made no such request.

Defendant Cruz-Maldonado did file a motion to dismiss on September 20, 2007.[7]  Plaintiff moved for an extension of time on September 24 until October 15 to file a reply.  The court denied that request the same day and ordered PPR to file its reply by October 1.  On October 1, PPR filed a second motion for extension of time by several hours, until October 2, to file its memorandum of law in response to the show cause order.  That motion was granted and the PPR filed a memorandum in compliance with the court's show

---

[7] Ordinarily a party opposing a motion to dismiss would have 20 days to respond under the Local Rule.  D.P.R. R. 7.1(b).

-13-

cause order on October 2. That same day, the district court dismissed the case without a hearing on Rooker-Feldman and res judicata grounds.[8] On October 11, 2007, PPR submitted a motion for reconsideration along with an amended complaint. The district court denied the motion for reconsideration the same day.

Following the plaintiffs' filing of the notice of appeal on October 12, 2007, the district court sua sponte entered an order on October 15 directing that the Puerto Rico Supreme Court turn over all documents from the Supreme Court, the Court of First Instance, and the appeals court that formed part of the record before the Supreme Court in PAC v. PIP. It said it did so acting on defendants' motion for purposes of attorneys' fees. The court granted Cruz-Maldonado's motion for attorneys' fees on October 23, 2007, finding that PPR's "case [had] been filed in an unreasonable manner and without foundation." The court awarded fees, and PPR's appeal encompasses the attorneys' fees order.

PPR's federal complaint alleges, inter alia, First Amendment and Fourteenth Amendment violations by the Commission

---

[8] The district court opinion also stated that PPR failed to assert an England reservation. The court reasoned this was necessary for PPR to litigate its federal claims in federal court following the resolution of its Commonwealth claims in the Puerto Rico courts. This analysis is misplaced, as plaintiffs did not seek initial review in federal court before resolution of the Puerto Rico claims in the Commonwealth court, therefore no Pullman abstention could occur. See England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411 (1964). And so PPR could not make an England reservation.

-14-

under color of Commonwealth law.  See 42 U.S.C. § 1983.  PPR ultimately seeks declaratory and injunctive relief, if the proof shows fraud, nullifying PIP's registration in the petition process, decertifying PIP as a party, and granting PPR status as the third principal party.[9]

### III.

We review de novo the district court's dismissal on both the res judicata and Rooker-Feldman grounds, accepting the complaint's well-pleaded facts as true and indulging all reasonable inferences in the plaintiff's favor.  See Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 89 (1st Cir. 2007) ("We review de novo a district court's dismissal of a case on res judicata. . . . We accept as true the factual allegations of the complaint and draw all reasonable inferences in the plaintiff's favor."); Davison v. Gov't of P.R.-P.R. Firefighters Corps., 471 F.3d 220, 222 (1st Cir. 2006) ("We review a dismissal for lack of subject matter jurisdiction de novo, 'accepting the plaintiffs' well-pleaded facts as true and indulging all reasonable inferences to their behoof.'" (quoting McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006))).

---

[9]    PPR also pleads that certain relief would follow.  The defendants argue that the remedy that PPR seeks is essentially unobtainable because under Puerto Rico law the PPR was not actually on the gubernatorial ballot in the 2004 election.  We limit our review to the Rooker-Feldman and res judicata bars considered by the district court and will not address the merits of the complaint or the relief that could be obtained if the PPR proves its case.

-14-

A.          English Language Requirement in the Federal Courts In
            Puerto Rico

The district court erred in granting a motion to dismiss that turned entirely on an untranslated Spanish language decision of the Puerto Rico Supreme Court.  Defendants, as the moving parties, had the obligation to provide the district court with a certified English translation of the Puerto Rico Supreme Court decision of December 29, 2006, on which they relied for both arguments in their motion to dismiss.

Under 48 U.S.C. § 864, "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."  We have enforced the rule where the Spanish language document or matter is key to the outcome of the proceedings in the district court.

In González-De-Blasini v. Family Department, we held that "[t]he district court should not have considered any documents before it that were in the Spanish language."  377 F.3d 81, 89 (1st Cir. 2004).  Violations of the English requirement "will constitute reversible error whenever the appellant can demonstrate that the untranslated evidence has the potential to affect the disposition of an issue raised on appeal."  United States v. Rivera-Rosario, 300 F.3d 1, 10 (1st Cir. 2002).  By contrast, where "it is crystal clear that none of [the Spanish language documents] bear on any of the issues that the [district] court found dispositive in adjudicating," the presence of untranslated documents will not constitute

reversible error.  Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 13 (1st Cir. 2007).

Here it is "crystal clear" that the Puerto Rico Supreme Court opinion, which was not translated from the Spanish, provided the very basis for the dismissal of the action on both grounds.  The defendants relied on the untranslated opinion both to make their Rooker-Feldman argument and their res judicata arguments.  Where a party makes a motion to dismiss based on a decision that was written in a foreign language, the party must provide the district court with and put into the record an English translation of the decision.

There are many policy reasons for strictly enforcing the statute's English-language rule in these circumstances, outlined in our prior cases.  See Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004).  Allowing the outcome of a case to turn on a non-English language document would be "at odds with the premise of a unified and integrated federal courts system," id., and effectively exclude the public from access to court decisions.  "The policy interest in keeping the District of Puerto Rico as an integrated part of the federal judiciary is too great to allow parties to convert that court into a Spanish language court at their whim."  Rivera-Rosario, 300 F.3d at 8 n.9.

There is nothing new about the law in this area, and the failure of defendants to provide a translated copy of a critical decision alone warranted denial of their motion.

-16-

B.        Rooker-Feldman

The Rooker-Feldman doctrine bars parties who lost in state court from "seeking review and rejection of that judgment" in federal court.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005).  Puerto Rico is treated as a state for purposes of full faith and credit.  Medina v. Chase Manhattan Bank, 737 F.2d 140, 142 (1st Cir. 1984); see also Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6 (1st Cir. 2004) (treating Puerto Rico as a state for purposes of Rooker-Feldman).

The Rooker-Feldman doctrine does not apply here because the core issues raised in plaintiffs' federal court complaint do not seek to reverse the judgment of the Puerto Rico Supreme Court, which concerned Regulation Section 8.3.  Rather, PPR's federal suit raises, inter alia, the separate issue of fraud and improper actions by defendants arising from the Commission's later allowance of contested PIP signatures during the petition drive, the Commission's alleged abetting of fraudulent signatures, and the attempt to impede efforts to prove the fraud by giving the petitions back to PIP, all in contrast to the Commission's treatment of the PPR.

"The Rooker-Feldman doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil, 544 U.S. at 284; see

-17-

also <u>D.C. Court of Appeals</u> v. <u>Feldman</u>, 460 U.S. 462 (1983); <u>Rooker</u> v. <u>Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>Overseas Military Sales Corp.</u> v. <u>Giralt-Armada</u>, 503 F. 3d 12, 15 n.2 (1st Cir. 2007). "[T]he narrow ground occupied by <u>Rooker</u>-<u>Feldman</u>," <u>Exxon Mobil</u>, 544 U.S. at 284, does not apply here. The decision of the Puerto Rico Supreme Court at issue in the instant case addressed only the validity of the Commission's decision to certify PIP as a party by petition under Section 8.3 of the electoral regulation.[10]

No doubt the "kitchen sink" approach taken by the plaintiffs' broadly worded complaint contributed to the outcome the district court reached. To be sure, PIP's federal court complaint is inartfully drafted and does mention, as background, its argument to the Puerto Rico Supreme Court that there was a violation of Section 8.3 of the Commission regulation. Fairly read though, these allegations are part of a larger set of allegations that the Commission has favored the PIP and disfavored the PPR, as set out earlier. Plaintiffs have made clear they do not seek to relitigate

_____

[10] PPR also argues that <u>Rooker</u>-<u>Feldman</u> does not apply because the doctrine may only be invoked where the same <u>party</u> that lost in state court is the <u>party</u> which seeks review of that judgment in federal court. <u>See</u> <u>Lance</u> v. <u>Dennis</u>, 546 U.S. 459, 466 (2006) ("The <u>Rooker</u>-<u>Feldman</u> doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."). PPR contends that a different party brought suit in the Commonwealth courts and that it was not at the time a recognized political party as it is now. We do not reach this issue.

-18-

the Section 8.3 issue, which was before the Commonwealth high court, in this federal court proceeding.

C.      Res Judicata

Plaintiffs also challenge the district court's dismissal of their federal claims in this suit as barred by the doctrine of res judicata.  Defendants assert, however, that the same claims were in fact brought, or alternatively that they could have been brought, in the prior Commonwealth court proceedings.  The defendants have not provided any evidence to support either contention, even considering the English translation of the Puerto Rico Supreme Court decision.

"Under 28 U.S.C. § 1738, federal courts must give the same effect to a state or territory judgment as the issuing jurisdiction would."  Morón-Barradas v. Dep't of Educ., 488 F.3d 472, 479 (1st Cir. 2007); see 28 U.S.C. § 1738 ("[J]udicial proceedings of any court of any . . . State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession . . . .").  Puerto Rican law thus governs the preclusive effect of the Puerto Rico Supreme Court's judgment in PAC v. PIP.  See Cruz v. Melecio, 204 F.3d 14, 18-19 & 18 n.2 (1st Cir. 2000).

Under Puerto Rican law, the party asserting a res judicata defense, such as the defendants, must make a threefold showing:

> (I) the existence of a prior judgment on the merits that is 'final and unappealable'; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted.

R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 183 (1st Cir. 2006) (emphasis added) (citing Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 61-62 (1st Cir. 2000)); see also Morón-Barradas, 488 F.3d at 479 ("Under Puerto Rico law, res judicata applies when there is 'the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.'") (quoting P.R. Laws Ann. tit. 31, § 3343).

"[T]he phrase 'perfect identity' cannot be taken literally" under Puerto Rican law. R.G. Fin. Corp., 446 F.3d at 183. This is particularly true in the requirement of a "perfect identity of . . . cause in both actions."[11]  Id.  Although the statute uses the phrase "res judicata," that is, claim preclusion, it also permits issue preclusion. Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 29 (1st Cir. 1998).

The doctrine of claim preclusion, or res judicata, "generally binds parties from litigating or relitigating any [claim]

---

[11]   Because we find that defendants have not shown that plaintiffs were precluded by the Commonwealth proceedings, we have no need to address the perfect identity of the parties element.

-20-

that was or could have been litigated in a prior adjudication." Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 42 (1st Cir. 1985). Issue preclusion, or collateral estoppel, "forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved." Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 205-206 (1st Cir. 2005) (per curiam) (quoting Texaco P.R., Inc. v. Medina, 834 F.2d 242, 245 (1st Cir. 1987)). Where the district court and the parties base their analysis entirely on claim preclusion, we do as well. Id. at 206; see also In re Bankvest Capital Corp., 375 F.3d 51, 69-70 (1st Cir. 2004) (analyzing only the category of res judicata doctrine argued by parties).

"Puerto Rico's courts have held that res judicata precludes the subsequent litigation of all claims that either were or could have been asserted in a prior action." R.G. Fin. Corp., 446 F.3d at 183; see, e.g., Commonwealth v. Sociedad Civil Agrícola e Industrial, 4 P.R. Offic. Trans. 546, 554 (1975)(per curiam). "For res judicata to operate, the precluded party must have had a full and fair opportunity to litigate her case in the earlier proceeding." Cruz, 204 F.3d at 19; see also Allen v. McCurry, 449 U.S. 90, 95 (1980).

As the party asserting the res judicata defense, defendants bear the burden of demonstrating that PPR's claims were raised or could have been raised in the state proceedings. "Once

-21-

properly raised, a party asserting preclusion must carry the burden of establishing all necessary elements."  18 Wright & Miller, Federal Practice and Procedure § 4405, at 83 (2d ed. 2002).  The defendants have not made this showing.  First, as a matter of evidence, defendants did not put in the record a certified translation of any aspect of the prior Puerto Rico court proceedings.

Second, from the English language version of the Puerto Rico Supreme Court opinion it appears that the issues actually raised before the non-appellate Commonwealth courts were substantially different from the claims for relief brought in the complaint in the instant case.  In the Commonwealth courts, PPR's primary challenge was to the timing of the Commission's authorization of PIP's re-registration, which it argued violated Section 8.3 of the electoral regulation.

PPR argues that it never raised in the Commonwealth courts the issue at the heart of the instant case, allegations we have already described.  On our reading of the translated Puerto Rico Supreme Court opinion's description of the Commonwealth court proceedings, the issues presented here were not at issue there.

There is one possible minor exception, not at the heart of the federal case, concerning the preliminary injunction by the Commonwealth Court of First Instance against illegal actions by the Commission up to that date in allowing PIP to use public resources

-22-

in conducting its petition drive. However, on the record before us, the federal suit raises issues about Commission "irregularities" as to the use of resources which occurred later in time and which were different in nature.[12]

The defendants also argue that plaintiffs could have brought their claims in the Commonwealth proceedings. But they have produced no evidence that this is so, even if one were to assume the same parties were involved. Indeed, in the memorandum accompanying his motion to dismiss, Cruz-Maldonado never described the Commonwealth proceedings, and stated only the legal rule that res judicata applies to all matters which might have been determined in the Puerto Rico courts. This conclusory statement that these are "the very same arguments" is insufficient to account for how PPR, which may not have known the extent of the disqualification of its ballots until sometime in 2006, and was unaware that PIP had possession of the petitions normally maintained by the Commission until September 2007, could have brought these claims in the Commonwealth courts. The Puerto Rico Supreme Court decision issued in December 2006, and the record necessarily closed long before then, when the case was in the Court of First Instance. The

---

[12] Through a letter submitted under Rule 28(j), defendants have cited Herman v. Meiselman, 541 F.3d 59 (1st Cir. 2008), to argue that PPR's claims were or should have been brought in the Commonwealth courts. This case does not help defendants, who have failed to provide evidence of the proceedings in the Puerto Rico courts.

-23-

sequence of events casts further doubt on the defendants' unsupported claims. On the papers before us, we cannot say that plaintiffs could have brought their claims in the Commonwealth courts. The case should not have been dismissed on res judicata grounds.

There are several other housekeeping issues to address. Because defendants are not prevailing parties, they should not have been awarded attorneys' fees. The district court sua sponte ordered[13] the Puerto Rico Supreme Court to turn over to the federal district court the entire record in the PAC v. PIP proceedings from the Commonwealth courts and ordered that those records be made a part of this case. We order the prompt return of those records to the Puerto Rico Supreme Court. Counsel for all defendants agreed at oral argument to such an order. If counsel for either side wishes to file with the federal court certified translations of Commonwealth court records in support of their arguments in proceedings on remand, it is their burden to do so.

IV.

We vacate the judgment of dismissal of the district court, reverse the award of attorneys' fees, order the Commonwealth

---

[13] The judge ordered a "certified copy of the Court's case file in Partido Accion Civil v. Partido Indenpendista Puertorriqueño . . . includ[ing] all pleadings and appendices filed in the Supreme Court, as well as all documents from the Court of First Instance and Circuit Court of Appeals which formed part of the record before the Supreme Court."

-24-

court records returned to the Puerto Rico Supreme Court, and remand for further proceedings consistent with this opinion. Costs are awarded to the plaintiffs. So ordered.