**In re AMERICAN BRIDGE PRODUCTS, INC.,**
Debtor.

**Lynne F. Riley, Chapter 7 Trustee of American Bridge Products, Inc., Plaintiff–Appellee**

v.

**Nicholas J. Decoulos, Esq. and Decoulos & Decoulos, Defendants–Appellants.**

Civil Action No. 06–10016–GAO.
Bankruptcy No. 96–16620.
Adv. Proc. No. 00–1142.

United States District Court,
D. Massachusetts.

Jan. 8, 2009.

Christopher A. Byrne, Washington, DC, Mark C. Rossi, Boston, MA, for Plaintiff–Appellee.

Lynne F. Riley, Altman Riley Esher LLP, Boston, MA, pro se.

Nicholas J. Decoulos, Esq., Peabody, MA, pro se.

William H. Harris, Harris & Dial, L.L.C., North Andover, MA, for Defendants–Appellants.

## OPINION AND ORDER

O'TOOLE, District Judge.

Nicholas J. Decoulos, Esq. appeals from a decision of the bankruptcy court in favor of Lynne F. Riley, Chapter 7 Trustee of

debtor American Bridge Products, Inc. ("ABP" or the "debtor"). The Trustee brought an adversary proceeding against Decoulos, formerly a state court-appointed receiver for ABP, seeking damages on behalf of the estate for Decoulos' misfeasance. The complaint in the adversary proceeding contained ten counts. The first two counts were directed at Decoulos as receiver. The remainder of the counts were directed either at him as attorney or at his law firm. After a bench trial, the bankruptcy judge, in a lengthy and detailed memorandum, found Decoulos, as receiver, liable for negligence (under Count I) and breach of fiduciary duty (under Count II) and ordered him to pay the lesser of (1) the sum needed to pay all creditors and administrative claimants of the estate of ABP in full; or (2) $379,173.78. The judge found for Decoulos as to the claims against him as attorney. Two counts (Counts VI and VII) directed at Decoulos' law firm were bifurcated and not tried to the judge because of her prior conclusion that the firm, unlike Decoulos personally, was entitled to a jury trial.

The bankruptcy judge also denied Decoulos' motion for compensation from the estate for his services as receiver of ABP.

Decoulos makes a number of claims of error on this appeal. All but one are meritless, but that one is significant. As explained below, this Court concludes that the bankruptcy judge erred in ruling that the claims against Decoulos as receiver set forth in Counts I and II were not barred by the applicable statute of limitations. For the same reasons that she found the other claims against him were time-barred, the claims against him as receiver are also barred.

## I. Summary of Pertinent Facts

The bankruptcy judge's memorandum of decision sets forth in careful detail the facts concerning the financial distress of ABP and the ensuing litigation, and it is not necessary here to repeat the full story. *In re Am. Bridge Prods.*, 328 B.R. 274, 278–322 (Bankr.D.Mass.2005). A brief summary of facts pertinent to the issues raised in this appeal will suffice.

In 1990, several men—William Mahoney, Francis Kilroy, Cesar Martinez, Robert Conti, and later Satyendra Agarwal— agreed to combine efforts to form and operate ABP. The company, based in Lynn, Massachusetts, would fabricate and sell products to be used in the rebuilding or refurbishment of bridges.

Relations among the various participants soon deteriorated. On August 25, 1993, at the instance of Kilroy and Agarwal, ABP commenced an action against Conti and some of his associates in the Massachusetts Superior Court for Essex County ("Essex action"). The complaint alleged that Conti and his associates had conspired to seize control of ABP and its assets and defraud its creditors, and further that the Everett Savings Bank had breached its contractual relationship with ABP by allowing Conti to divert ABP assets even though he was not an authorized signatory as to ABP's accounts maintained at the bank. On September 22, 1993, a judge of the Superior Court appointed Decoulos, an attorney with an office in Peabody, Massachusetts, to serve as receiver of ABP for purposes of the Essex action.

The bankruptcy judge found that "Agarwal and Kilroy became disenchanted with Decoulos's performance as Receiver of ABP within months, if not weeks, of his appointment." *Id.* at 294. They filed a Chapter 11 bankruptcy petition on behalf of the company, but it was dismissed on motion of the United States Trustee. In January 1994, they also filed a complaint against Decoulos with the Massachusetts

Board of Bar Overseers, but the Board took no action. They hired their own lawyer, G. Shepard Bingham, to keep an eye on Decoulos' performance as ABP's receiver. In June 1994, Bingham formally objected to Decoulos's report to the Superior Court and his application for authority to pay certain expenses, including his own fee, without success. The court allowed the application, but admonished Decoulos to be more aggressive in discharging his duties as receiver.

Bingham continued to press Decoulos to be diligent on behalf of ABP. On September 6, 1994, Decoulos filed with the Superior Court an application for an order of notice to Conti and others to show cause why they had not surrendered certain property to him as ABP's receiver. Bingham moved on behalf of ABP to amend Decoulos' application to protect any property that might be surrendered and further to compel the Everett Savings Bank to account for all moneys belonging to ABP that the bank had wrongfully permitted to be deposited in Conti-controlled accounts. The court allowed Decoulos' application, but took no action on Bingham's proposed amendment.

Through correspondence, Bingham continued to press Decoulos to take various protective actions on behalf of ABP. He monitored Decoulos' filings with the Superior Court, and at least once more he moved, on behalf of ABP, to amend one of Decoulos' applications to add provisions beneficial to ABP. Over Decoulos' objection, Bingham also sought to be appointed special counsel to the receiver, again without success.

The bankruptcy judge found, "Throughout the spring of 1995, Bingham continued to correspond with Decoulos, urging him to take forceful action." *Id.* at 301. In April, he wrote to Decoulos urging him to take action on behalf of ABP and threatening "to file a Motion seeking an immediate accounting as well as your removal as Receiver." *Id.* at 302. This apparently spurred Decoulos into taking some steps to institute legal proceedings against various parties to identify and preserve assets properly belonging to ABP.

In July 1995, Bingham moved on behalf of ABP to have Decoulos removed as receiver in the Essex action. The motion asserted that Decoulos "by his acts of omission and/or commission, all as set forth more particularly in the attached Affidavit, failed to gather and preserve the assets of ABP; he has allowed the same to be stolen and/or otherwise wrongfully converted and/or dissipated by the Defendants." *Id.* at 305. The court denied the motion to remove Decoulos and approved his application for payment of fees.

Trial of the Essex action was scheduled for early January 1996. Bingham insisted that Decoulos had responsibility for trying the case; Decoulos insisted Bingham had that responsibility. The trial did not go forward as scheduled. Instead, with some supervision by the court, Decoulos undertook, through the first half of 1996, to try to resolve the claims in the case short of trial. Another trial date was set for September 11, 1996. However, the involuntary bankruptcy petition against ABP in this case was filed August 30, 1996. Joseph Braunstein, Esq. was appointed to serve as Chapter 7 Trustee on October 23, 1996.[1] Decoulos cooperated with the Trustee to wind up the receivership estate by turning over all funds, files, and information in his possession regarding ABP's property. Decoulos, however, neglected to file a formal accounting regarding ABP's

---

1. Braunstein served as Chapter 7 Trustee from October 23, 1996 through March 29, 1999. Lynne F. Riley succeeded him as Trustee.

property or his administration with the bankruptcy court as required by 11 U.S.C. § 543(b) and Federal Rule of Bankruptcy Procedure 6002.

On November 20, 1996, Decoulos filed an application in the bankruptcy case for payment of compensation earned as pre-bankruptcy receiver for the debtor.

The Trustee was substituted for ABP as plaintiff in the Essex action in January 1997. Later, pursuant to an agreement, a bank creditor of ABP took over prosecution of the action. A settlement was ultimately reached among the parties to the Essex action, which was approved by the bankruptcy judge on July 21, 1998.

The Essex action was dismissed in accordance with the settlement, but Decoulos never filed a final statement of account with the Superior Court as apparently required by Massachusetts Rule of Civil Procedure 66(e), and the Superior Court never entered an order formally discharging Decoulos as receiver.

The present Trustee initiated the adversary proceeding at issue here against Decoulos and his law firm on March 9, 2000.

## II. Core or Non–Core?

■ Before turning to the question of the statute of limitations, it is necessary to determine whether the bankruptcy judge had the authority to adjudicate on the merits the claims raised in the adversary proceeding against Decoulos. That question turns on whether the adversary proceeding is considered a "core" or a "non-core" proceeding.

Decoulos argues that because the claims against him arise only under state law and refer to pre-petition events, they are "non-core" and thus outside the bankruptcy court's jurisdiction under 28 U.S.C. § 157(b). He is correct that the claims in the adversary complaint by themselves would ordinarily be characterized as non-core. *See In re Spookyworld, Inc.*, 266 B.R. 1, 8 (Bankr.D.Mass.2001) (defining "non-core" claims as "state or federal claims that arise between parties within a bankruptcy proceeding ... [which could] survive outside bankruptcy, and in the absence of bankruptcy, would have been initiated in a state or district court") (internal quotation omitted). However, courts routinely deem state law claims in the nature of counterclaims to be core proceedings when they are asserted by a trustee against a creditor who has previously asserted a claim against the bankruptcy estate. In *In re Baudoin*, 981 F.2d 736, 741 (5th Cir.1993), for example, the Fifth Circuit observed that a "response to a proof of claim which is, in essence, a counterclaim, is a core proceeding under 28 U.S.C. § 157(b)(2)(C)." *See also In re Envisionet Computer Servs., Inc.*, 276 B.R. 7, 11 (D.Me.2002) ("The bankruptcy court can exercise core jurisdiction over a proceeding when a party's claims against another party are the equivalent of counterclaims...."); *In re ABC–Naco, Inc.*, 294 B.R. 832, 837–38 (Bankr.N.D.Ill.2003).

*In re CBI Holding Co., Inc.*, 529 F.3d 432 (2d Cir.2008), is particularly instructive. In that case, an accounting firm submitted a proof of claim for pre-petition services rendered. *Id.* at 437. The trustee alleged that the firm had failed to conduct audits in compliance with generally accepted auditing standards and the firm's negligence led to debtor's bankruptcy. *Id.* at 439–41. The Second Circuit reasoned that the trustee's state law claims of fraud, negligence, and breach of contract were, under the circumstances, core proceedings under § 157(b)(2)(C) because these claims related to the value of the professional services for which the accounting firm sought compensation and

had been filed in response to that claim. *See id.* at 460–62.

Similarly, in the present case, Decoulos sought to be compensated for his services as receiver. His application for compensation amounted to an administrative expense claim filed against the bankruptcy estate. 11 U.S.C. § 503(b)(3)(E) [2]; *see In re Weinstein,* 251 B.R. 174, 181 n. 8 (1st Cir. BAP 2000) (chronicling cases where pre-filing expenses, including receiver's compensation, qualify as administrative expenses), *overruled on other grounds In re Weinstein,* 272 F.3d 39 (1st Cir.2001). It invited counterclaims addressed generally to the value of the services claimed to have been rendered and particularly to losses to the estate caused by negligence and/or breach of fiduciary duty, just as in *In re CBI Holding Co., Inc.* Such claims are core proceedings under § 157(b)(2)(C).

### III. Statute of Limitations

Decoulos argues that all claims against him in the adversary proceeding are barred by the statute of limitations. The bankruptcy judge summarily found that the expiration of the limitations period barred the claims brought under various state law theories against Decoulos as an *attorney. In re Am. Bridge Prods.,* 328

B.R. at 354 (as to Counts III and IV) [3], at 355–56 (as to Counts V, VI, IX and X) [4]. As to the claims against Decoulos as *receiver,* however, she concluded that the limitations period had not run. Her entire statement on the matter was as follows:

Any determination of a receiver's liability, whether personal or official, is not subject to a statute of limitations defense in the absence of his discharge. "The position of a receiver is one in which liability to account would not easily be barred, and so long as he is living he must be held to have been a trustee of the money received therefore the defense of the statute of limitations is not a bar to a claim against him." 2 *Clark on Receivers* § 418, at 705–706. *See also Riley v. Decoulos,* Adv. P. No. 00–1142, Slip Op. (Bankr.D.Mass. February 5, 2002), in which this court noted that Decoulos neither received a discharge in the Essex Action nor filed a report and account in accordance with Fed. R. Bankr.P. 6002.

*Id.* at 350.

Counts I and II were claims under Massachusetts law for, respectively, negligence and breach of fiduciary duty. The limitations period for such claims is three years. Mass. Gen. Laws ch. 260, § 2A; *see Lo-*

---

**2.** Section 503(b) of Title 11, in relevant part, states:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . . (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian.

The term "custodian" is, in turn, defined as a "receiver or trustee of any of the property of the debtor appointed in a case or proceeding not under this title." *Id.* § 101(10)(A)

**3.** The judge said simply, "[T]he statute of limitations defense raised by Decoulos with respect to his conduct as an attorney has merit. *See* Mass. Gen. Laws ch. 260, § 4." *In re Am. Bridge Prods.,* 328 B.R. at 354.

**4.** The judge said:

> Further, the Court concludes that the statute of limitations defense raised by Decoulos and his firm are meritorious. Regardless of whether the creditors or ABP were beneficiaries of Decoulos's services, the statute of limitations applicable to the c. 93A claim expired long before she was appointed Trustee. *See* Mass. Gen. Laws ch. 260, 5A.

*Id.* at 355–56.

*Cicero v. Leslie,* 948 F.Supp. 10, 12 n. 2 (D.Mass.1996). The adversary complaint was filed March 9, 2000. For the claims to have been viable, they had to have accrued no earlier than March 9, 1997. (As a point of reference, Braunstein as Trustee took over responsibility for the prosecution of the Essex action in January 1997.)

■ A tort-based cause of action typically accrues when the plaintiff is injured. *Koe v. Mercer,* 450 Mass. 97, 876 N.E.2d 831, 836 (2007). In cases where the plaintiff did not know of the injury at the time it occurred, Massachusetts applies a "discovery rule" to delay the commencement of the limitations period until the plaintiff knows or reasonably should know that he has been harmed by the defendant's conduct. *Id.* In such cases, the limitations period begins to run when the plaintiff "has first, an awareness of [his] injuries and, second, an awareness that the defendant caused [his] injuries." *Id.* (internal quotation and citation omitted).

■ The acts or omissions by Decoulos that form the basis for the claims of negligence and breach of fiduciary duty occurred between his appointment as receiver for ABP in 1993 and the automatic termination of his activities in that respect in 1996, all well outside the three-year period prior to the commencement of the action. Because Bingham and his clients were well aware of what they regarded as Decoulos' lack of diligence and/or competence as receiver at the time of those events, the discovery rule is not implicated to change the time of accrual of the causes of action. On a straightforward application of Massachusetts law regarding the accrual and limitation of actions, then, Counts I and II would be barred.

The bankruptcy judge implicitly recognized these principles in concluding, as an alternate ground of decision, that Decoulos was entitled to prevail on the other claims in the complaint because they were untimely. As to Counts I and II, however, she apparently thought a different outcome was required because the claims were against Decoulos as receiver and because he had neither formally completed his receiver's duties nor been formally discharged. The only authority cited for her conclusion is a proposition attributed to a relatively ancient treatise. *See In re Am. Bridge Prods.,* 328 B.R. at 350 (citing 2 *Clark on Receivers* § 418 (3d ed.1959)).

There are several problems with this position. First, there is no indication that Massachusetts law incorporates the proposition attributed to the treatise. The treatise author does not give any such indication; indeed, there is good reason to think the author was not addressing American law at all, but rather English practice, and old English practice at that. The only citation given in the treatise for the proposition is to a nineteenth century English case. 2 *Clark on Receivers* § 418 (citing *Seagram v. Tuck,* (1881) 18 Ch.D. 296).[5] Conversely, the parties have not cited, and I have not found, any Massachusetts authority specifically espousing the proposition the judge relied on.

Moreover, the statement taken from the treatise does not necessarily support the broad proposition, as stated by the bankruptcy judge, that a "determination of a receiver's liability, *whether personal or official,* is not subject to a statute of limitations defense in the absence of his discharge." *In re Am. Bridge Prods.,* 328 B.R. at 350 (emphasis added). The treatise author may have been contemplating only official liability. The statement that

5. In another section of the treatise, the proposition is repeated and specifically attributed to the "English courts." 2 *Clark on Receivers* § 573(b).

"so long as he is living he must be held to have been a trustee of the money received," 2 *Clark on Receivers* § 418, could be understood to carry the implicit qualification, "until the money is paid over to the rightful recipient." That possibility is compatible with the immediate next two sentences in the treatise, not quoted by the bankruptcy judge:

> Money not accounted for and due from a receiver under the court is by his recognizance made a debt of record, although the balance due has not been ascertained. As to any money due from a receiver and not brought into account either by mistake or through fraud, the receiver would be a trustee for the persons entitled to that money.

*Id.* The author could be referring only to receivership property previously delivered into the hands of the receiver and later "not accounted for and due," rather than to the possibility of the receiver's liability in damages for negligence or breach of fiduciary duty in failing properly to marshal the receivership assets in the first place, which are essentially the claims against Decoulos. At any rate, the meaning of the passage is doubtful, and it is not strong support for the broad conclusion that the bankruptcy judge drew.

The treatise passage relied on by the bankruptcy judge is also a terse and summary statement, with no discussion of how different factual contexts might affect the application of the general principle stated. In most areas of the law, broad principles are not uncommonly subject to exceptions to accommodate particular circumstances. So here, there are potential ambiguities in the general statement that could require its adjustment to particular circumstances. Take the receiver's obligation to "account for" the receivership property, for example. Would that obligation be satisfied by a receiver who has "accounted for" the money held as receiver by fully paying it over to a trustee in bankruptcy as his successor, though he has not "accounted for" the money in the sense of filing a formal statement of account? Substantial compliance with obligations is often accepted as sufficient despite procedural irregularities that themselves have no deleterious practical consequence. In this case, whether or not any such circumstance-based accommodation of the broad general principle were to be permitted would be of great importance, because Decoulos appears to have been in the position of having turned over to the Trustee all the receivership property, while having omitted to fulfill his obligation to file a formal statement of account.

Even if there were to be a rule as stated by the bankruptcy judge-that the limitations period does not begin to run as to claims against a receiver until the receiver has been "discharged"—the further question arises whether the supersession of the receivership by the appointment of a bankruptcy trustee and the consequent termination of a receiver's powers and duties with respect to the receivership property may be taken as a sufficient "discharge" of the receiver so that the limitations period would begin to run. Again, neither the bankruptcy judge nor the treatise she relied on addresses that question. Under the Bankruptcy Code, a receiver who is a custodian of property belonging to the debtor has essentially three obligations upon learning of the bankruptcy case: (1) cease active administration of the receivership estate, 11 U.S.C. § 543(a); (2) deliver the receivership property to the trustee, *id.* § 543(b)(1); and (3) file an accounting with the bankruptcy court, *id.* § 543(b)(2). Decoulos fulfilled the first two obligations, but not the third. The parties differ as to whether his partial compliance was enough to be considered a "discharge" for pur-

poses of limitations rule the bankruptcy judge applied.

Similarly, the parties dispute whether the termination of the Essex action could amount to a sufficient "discharge" of the receiver so that the limitations period would begin to run. The Trustee in her appellate briefs relies only a procedural rule, Massachusetts Rule of Civil Procedure 66(e), which states, "No order discharging a receiver from further responsibility will be entered until he has settled his final account." Put aside the supersessionary effect of federal bankruptcy law, merely citing the language of the rule begs the question when, or under what circumstances, a receiver might be held to have "settled his final account" for purposes of the state rule. Decoulos argues he effectively satisfied this requirement by yielding his authority and the receivership property in his possession to the Trustee. The Trustee says not. There are no reported Massachusetts cases interpreting or discussing the meaning of Rule 66(e).

The need to parse the meaning of "discharge" is necessary, however, only if one accepts the proposition stated by the bankruptcy judge that a receiver's discharge is the earliest time, apparently in every case without exception, from which any limitations period can begin to run.[6] As noted above, that proposition is rather weakly based on a very broad statement from an old treatise about the "law of receivership" generally, not Massachusetts law specifically. Reliance on that unelaborated and potentially ambiguous statement is a dubious and inadequate basis for applying a limitations rule at odds with rather well-developed Massachusetts law regarding the limitation of actions for negligence and breach of fiduciary duty.[7]

■ Indeed, as to trustees Massachusetts law appears to run contrary to the proposition relied on by the bankruptcy judge. In cases involving claims of breach of fiduciary duties by trustees, Massachusetts courts have held that "a cause of action does not accrue until the trustee repudiates the trust and the beneficiary has actual knowledge of that repudiation." *Lattuca v. Robsham,* 442 Mass. 205, 812 N.E.2d 877, 884 (2004); *see also Demoulas v. Demoulas Super Markets, Inc.,* 424 Mass. 501, 677 N.E.2d 159, 173 (1997) (applying the same accrual rule, in shareholder derivative litigation, to corporate directors who have fiduciary responsibilities to a corporation).

■ A trustee may repudiate the trust by "express words renouncing his fiduciary duty as trustee *or by taking actions inconsistent with his responsibilities as trus-*

---

6. There will undoubtedly be cases in which, consistent with the ordinary rules about the accrual of causes of action, the applicable limitations period will not begin to run until the discharge of the receiver. For example, the nature of the receiver's misfeasance or the fact of injury to the receivership estate may not be known until after the receiver has been discharged. The "discovery rule," generally applicable under Massachusetts law, would prevent the accrual of the cause of action until the relevant facts were known or reasonably susceptible of knowledge. *See Mercer,* 876 N.E.2d at 836.

7. Massachusetts courts have rejected proposed rules which would have the practical effect of tolling the statute of limitations indefinitely. *Cf. Malapanis v. Shirazi,* 21 Mass. App.Ct. 378, 487 N.E.2d 533, 539 (1986) (rejecting the contention that the statute of limitations in medical malpractice case cannot run until plaintiff knows of facts related to every element because "if it were otherwise, total understanding of the causal connection would be necessary to accrual of the cause of action and *the limitations period would almost never run*") (emphasis added); *see also Swasey v. Barron,* 46 Mass.App.Ct. 127, 703 N.E.2d 1208, 1211 (1999) (reaching same conclusion in legal malpractice case).

*tee." Freeman v. Houlihan*, 814 N.E.2d 763 (Table), 2004 WL 1933615, at *3 (Mass.App.Ct. Aug.31, 2004) (emphasis added). In *Lattuca v. Robsham*, for example, a trustee failed to repay trust funds used to cover his personal expenses. 812 N.E.2d at 884. The court reasoned that this trustee, who remained in office, repudiated the trust because this retention of funds violated his fiduciary obligation not to convert trust funds for personal gain. *Id.* at 884–85. Because he acted contrary to his obligations and the beneficiary had actual knowledge of the facts, the statute of limitations began to run against the trustee. *Id.* There is no reason to think that Massachusetts courts would apply a different standard to receivers.

The acts and omissions by Decoulos that underlie the claims set forth in Counts I and II of the adversary complaint had all been completed by late 1996, when the bankruptcy trustee took over responsibility for ABP's assets from Decoulos as receiver. For at least two years before that, principals of ABP, through Bingham their lawyer, had been vocal about what Decoulos was or was not doing on behalf of ABP. The public record of the Essex action contained their protests against Decoulos' stewardship and efforts to have him ousted as receiver. The conditions of the two-part test set out in *Mercer* for accrual of a cause of action—and thus the commencement of the limitations period—were met. The injured party had both an awareness of the injury and an awareness that the defendant had caused it. *See* 876 N.E.2d at 836. Indeed, the first Trustee, Braunstein, testified that he had considered pursuing a claim against Decoulos, but did not believe there was a viable claim to pursue. Whether that judgment was right or wrong, it is clear that the facts suggesting the cause of action were known, the claims had therefore accrued, and the limitations period had begun to run.

As noted earlier, the bankruptcy judge apparently followed this reasoning in concluding that the other claims against Decoulos, in a capacity other than receiver, were barred by the statute of limitations. She only reached a different result on Counts I and II because of her conclusion that the formal discharge of the receiver was necessary for the limitations period to begin to run. There is no reliable authority that holds that her proposition is part of Massachusetts law. In the absence of such authority, the principles of Massachusetts law that are clear ought to be applied. When they are applied to Counts I and II, the outcome is the same as that reached with respect to the rest of the claims against Decoulos. Because the claims were brought more than three years after the latest date as of which the limitations period could have begun to run—the termination of Decoulos' authority as receiver by the supersession of the bankruptcy trustee—the claims are barred under Massachusetts General Laws chapter 260, § 2A.

## IV. Other Issues

The other issues raised by the appellant can be addressed briefly in the interest of completeness.

### A. Rooker–Feldman Doctrine

█ Decoulos argues that the bankruptcy court contravened the so-called *Rooker–Feldman* doctrine by reviewing and reversing the state court orders denying requests to remove the receiver and allowing the receiver's pre-petition applications for compensation. His argument fails because "the narrow ground occupied by *Rooker–Feldman* " does not apply to this case. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

■ The *Rooker–Feldman* doctrine, based on *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), prohibits federal district courts from reviewing state court decisions. The U.S. Supreme Court recently clarified that this doctrine applies only in the "limited circumstances where the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp.,* 544 U.S. at 291, 125 S.Ct. 1517; *see Puerto Ricans for Puerto Rico Party v. Dalmau,* 544 F.3d 58, 68 (1st Cir.2008). In other words, *Rooker–Feldman* cannot be used interchangeably with traditional issue preclusion. *See Lance v. Dennis,* 546 U.S. 459, 466, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006).

■ Decoulos confuses *Rooker–Feldman* with issue preclusion. *Rooker–Feldman* applies only when the plaintiff seeks federal relief from an injury *caused by the state court's judgment. See Exxon Mobil Corp.,* 544 U.S. at 291, 125 S.Ct. 1517. Traditional issue preclusion, on the other hand, applies when the plaintiff "complains of an injury that was not caused by the state court, but which the state court has previously *failed* to rectify." *Galibois v. Fisher,* 174 Fed.Appx. 579, 581 (1st Cir. 2006) (quoting *Jensen v. Foley,* 295 F.3d 745, 747–48 (7th Cir.2002)) (emphasis in original); *see also Todd v. Weltman, Weinberg & Reis, Co.,* 434 F.3d 432, 437 (6th Cir.2006); *Washington v. Wilmore,* 407 F.3d 274, 280 (4th Cir.2005); *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir.2003) (all drawing distinctions between injuries caused by the state court and injuries caused by the defendant).

The *Rooker–Feldman* doctrine did not deprive the bankruptcy court of jurisdiction over the adversary proceeding.

### B. Collateral Estoppel/Issue Preclusion

Decoulos also contends that preclusive effect should be given to the Superior Court's denial of the motions to remove him as receiver in the Essex action. Essentially, he argues that the state court must necessarily have considered the same allegations of negligence or lack of diligence that the Trustee raises in the adversary complaint. The defense is inapplicable.

■ Pursuant to 28 U.S.C. § 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *In re Sonus Networks, Inc. S'holder Derivative Litig.,* 499 F.3d 47, 56 (1st Cir.2007). Accordingly, this Court must give effect to the Essex Superior Court's rulings in favor of the receiver if a Massachusetts court would do the same.

■ Under Massachusetts law, the party invoking issue preclusion must prove that:

(1) a final judgment was rendered on the merits in the prior action; (2) the issue for which preclusive effect is sought was actually litigated and was essential to the judgment in the prior action; (3) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior action; and (4) the issue in the prior action with respect to which issue preclusion is asserted is the same as the issue in the instant case.

*In re Brennan,* 275 B.R. 172, 175 (Bankr. D.Mass.2002) (citing *Heacock v. Heacock,*

402 Mass. 21, 520 N.E.2d 151, 152 (1988)). At the very least, Decoulos' argument fails to meet the first two criteria.

■ The Superior Court's rulings denying the motions to remove, brought by Bingham, were summary in nature and were not essential to any final judgment. They were actions taken in the court's superintendence of the case *sub judice*, but they were not "fully litigated" matters. Even the grounds for the denial of the motions are obscure. There is no solid basis in the record to conclude that questions as to Decoulos' negligence or his competence were necessarily resolved when the court gave its *brevis* denial of the removal motions or when it allowed Decoulos' claims for compensation.

### C. Proximate Cause

■ Lastly, Decoulos argues that the bankruptcy court erred because there was "no evidence" of proximate cause connecting his negligence and the damages incurred by ABP. Under Massachusetts law, proximate cause constitutes a question of fact unless there is no dispute as to the effect of the facts established. *Kent v. Commonwealth*, 437 Mass. 312, 771 N.E.2d 770, 776 (2002) ("Proximate cause may be determined as a question of law when there is no dispute as to the effect of the facts established."). Factual determinations made by the bankruptcy court are evaluated under a "clearly erroneous" standard. *In re Bank of New Eng. Corp.*, 364 F.3d 355, 361 (1st Cir.2004). Given the bankruptcy court's meticulous explanation of how it determined each of the damage figures, the court was certainly not clearly erroneous in concluding that there were sufficient facts to establish that Decoulos was the proximate cause of ABP's damages.

In light of this Court's conclusion that the claims in Counts I and II are barred as untimely, however, the ascertainment of damages is moot.

### V. Conclusion

For the foregoing reasons, the bankruptcy court's decision is REVERSED as to Counts I and II. The claims set forth in those counts are barred by the applicable statute of limitations. In all other respects, the judgment of the bankruptcy court is AFFIRMED. This case is REMANDED to the bankruptcy court for entry of judgment consistent with this Opinion and Order.