**In the Matter of IRA HAUPT & CO., a Limited Partnership, Bankrupt.**

No. 64 B. 259.

United States District Court
S. D. New York.

June 7, 1968.

operated in the alleged trade secret range long before the Strain visit.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for petitioners-limited partners.

Seligson & Morris, New York City, for trustee.

Milbank, Tweed, Hadley & McCloy, New York City, for James P. Mahony.

## OPINION

TYLER, District Judge.

This memorandum deals with a petition for review of orders of Referee Edward Ryan entered in these bankruptcy proceedings on February 9 and March 14, 1968. In general, the limited partners ("petitioners") of Ira Haupt & Co. ("Haupt") attack these orders upon the ground that they do not agree that a pre-bankruptcy accounting rendered by liquidator James P. Mahony satisfied the requirements of section 2a(21) of the Bankruptcy Act, 11 U.S.C. § 11(a) (21), as the Referee found.

Because many aspects of this bankruptcy matter have been amply set forth in numerous reported cases in this Circuit, it is neither necessary nor desirable to extensively recite the background facts. As is well known, on November 19, 1963, Haupt, which had been engaged for some years in the general brokerage

and commission business in New York City, became a principal victim of what has come to be known as the "salad oil scandal". On November 20, 1963, Haupt was suspended by the New York Stock Exchange. On that day or a day or two thereafter, it was estimated that the extent of Haupt's capital deficiency was approximately $20,000,000.00. In an effort to protect Haupt's approximately 20,000 customer-creditors and to preserve public confidence in the securities industry, the New York Stock Exchange and Haupt's creditor banks entered into the now well-known "Agreement of November 25, 1963". Among other things, that agreement called for orderly liquidation of Haupt and provided for the appointment of a liquidator with broad powers of attorney from the general partners of Haupt. Mr. James P. Mahony, formerly Chief Examiner of the New York Stock Exchange, was designated as liquidator.

Mahony served as liquidator from November 25, 1963 until March 19, 1964 when he was replaced by Mr. Edward Feldman. The latter acted as liquidator for three business days only.

Some idea of the magnitude and difficulty of the task performed by Mr. Mahony as liquidator can be conveyed by the findings of Referee Ryan in his memorandum and order of February 9, 1968, which in turn are based upon an affidavit and accounting verified by Mahony on October 10, 1966. Mahony worked with an advisory committee of twelve experts and his own legal counsel, some 600 former Haupt employees and employees on loan from the New York Stock Exchange and various member firms to perform his task as liquidator. During Mahony's tenure, over $116,000,000.00 worth of creditors' claims against Haupt were satisfied. Mahony disbursed $7,471,478.-56 out of funds supplied by the Exchange to purchase claims of Haupt's customers.

He also expended considerable time and efforts in salvaging customers' accounts. Between 8,000 and 9,000 of the customers' accounts at Haupt were margin accounts. The bank loans secured by margin account securities and totaling about $70,000,000.00 were parceled among 48 different banks. In an effort to free the securities in these margin accounts for the customers, Mahony made arrangements to pay down the loans. Specifically, he paid or transferred out all but 200 of the 20,700 customers' accounts. He also collected net debit balances owing to Haupt in excess of $90,-000,000.00 from customers. When the liquidation began in late November 1963, Haupt held securities for customers valued at about $490,000,000.00. The process of freeing the customers' securities involved tens of thousands of manhours. For example, over 14,000 checks were written, and thousands of customers were solicited for instructions respecting the delivery of their securities and for advice concerning their commodities accounts.

Mahony also disposed of 15 branch offices of Haupt. He has stated before the Referee that approximately 11,000 inquiries concerning customers accounts were handled during his term.

It will be only necessary to set forth a brief chronology of the proceedings in bankruptcy in order to place the present application of the limited partners in some focus. After the petition for bankruptcy had been filed in this court, Referee Ryan, *sua sponte*, on January 13, 1965, issued an order under section 2a (21) of the Bankruptcy Act directing the New York Stock Exchange, the creditor banks of Haupt, and Messrs. Mahony and Feldman to account in respect to their taking possession of and liquidating the assets of Haupt within four months prior to the filing of the petition of bankruptcy. Several weeks later on February 26, 1965, Referee Ryan entered an order "vacating" the January 13th order without prejudice and directing that the duty of accounting pursuant to section 2a(21) was to be that of Mahony and Feldman.

Thereafter, in response to the modifying order of February 26, 1965, Mahony proceeded to file a 37 page affidavit verified October 10, 1966 to which were at-

tached voluminous exhibits and appendices. Moreover, on February 13, 1967, at the direction of Referee Ryan, Mahony furnished additional exhibits and documents as part of his account.

On April 4, 1967, the trustee, Charles Seligson, applied to the Referee to fix a date for a hearing to determine whether Mahony had complied with the order of the court dated February 26, 1965 and whether Mr. Edward Feldman should be required to serve and file any written accounting respecting the three business days during which he served as liquidator.[1] This application was granted, and after a number of postponements and adjourned hearings, Referee Ryan filed an opinion and order of February 9, 1968 in which, *inter alia*, he apparently approved Mahony's accounting and denied the informal applications of the limited partners for authority to compensate their lawyers and accountants for investigations which they might care to make into the Mahony accounting.

In his February 9th opinion, Referee Ryan directed that the parties settle an order to reflect the substance of his opinion. Because counsel for the trustee and counsel for the limited partners submitted orders and counter-orders which in his judgment did not comply with his opinion, Referee Ryan on March 14, 1968 entered, *sua sponte*, another memorandum in the nature of a final order consistent with his opinion of February 9th.

Despite voluminous briefs and the welter of charges and counter charges, both oral and written, of the parties upon this application, I confess to considerable difficulty in ascertaining precisely what counsel for the limited partners is seeking to achieve on this petition for review. As best I can determine, it is essentially contended by the limited partners and

their counsel that the Referee erred in the following respects:

1. The Referee erroneously approved the accounting of Mahony on the sole ground that that accounting was satisfactory to the trustee.

2. The material submitted by Mahony to the court is not the kind of accounting required by section 2a(21) of the Bankruptcy Act.

3. The Referee erred in not granting the application of counsel for the limited partners to require the New York Stock Exchange and the creditor banks which were parties to the November 25, 1963 agreement to account.

4. The Referee erred by failing to order that the expenses of the Mahony accounting should be charged to the banks and to the stock exchange, and not to the bankrupt estate.[2]

After reading the entire record certified by the Referee, all of the briefs of the parties and the accounting affidavit of Mahony, together with the subsequent documents which are incorporated in that accounting,[3] I conclude that this matter must be remanded to the Referee for further hearing and consideration by him. As will be indicated hereinafter, I regard most of the arguments of petitioners' counsel, with certain exceptions to be noted, as either red herrings or unnecessary anticipation of problems which have not been reached in the course of the bankruptcy proceedings. Consequently, in view of my ultimate conclusion that the record is not complete and certain, it might be fairly suggested that this is due in no small part to the procedures followed by counsel for the petitioners.

■ In any case, the third and fourth issues recited hereinabove can be dispensed with in short order. I do not

---

1. It does not appear that Feldman has accounted. The parties raise no issue as to Feldman's accounting responsibilities, if any, on this petition for review.

2. As will be discussed infra, this issue perhaps should be broken into two parts: (1) Mahony's expenses and compensation, and (2) compensation to counsel

and accountants investigating the Mahony accounting on behalf of petitioners.

3. For reasons unknown to the court, the parties failed to include in the record on review the affidavits and documents making up Mahony's account. Thus, I obtained these documents from the Referee.

agree with the petitioners that the Referee erred in not granting their application to require the New York Stock Exchange and the creditor banks to account. As the Referee pointed out at pages 13 and 14 of his opinion of February 9, 1968, the petitioners did not raise this point until the so-called hearings on the Mahony accounts were well underway, and then the point was only raised obliquely in the course of one of the briefs or memoranda of law submitted by counsel for the petitioners. Moreover, I can find no facts in the record which would justify granting this relief at this time. Finally, the Referee made it abundantly clear that the denial of this particular relief was without prejudice; certainly, as the Referee pointed out, the petitioners can always make application for such relief in the course of these proceedings. In sum, I believe that Referee Ryan was eminently sensible in concluding that the petitioners should file a formal application based upon facts indicating some reasonable necessity for an accounting by the creditor banks and the New York Stock Exchange.

■ The fourth issue referred to hereinabove stems from the petitioners' contention that the Referee erred by failing to order and direct that the expenses of the Mahony accounting—and perhaps as well petitioners' expenses in attempting to verify that accounting—should be charged to the banks and the New York Stock Exchange, and not to the bankrupt estate. Unfortunately, this "issue" is difficult to grasp on the face of the briefs and other papers of the petitioners. As now discussed by counsel for the petitioners and responded to by the other interested parties, this issue really casts up two questions, only one of which, as I read the record, was squarely posed to Referee Ryan for decision. In his February 9, 1968 opinion, Referee Ryan apparently understood the sole question to be whether or not the lawyers and accountants of petitioners should be compensated for any investigation and inquiry they made into the Mahony account and related matters. The Referee regarded this application to be premature, but he specifically held the door open for another application by petitioners, if, as and when necessary. Again, I find that the Referee acted well within bounds of his discretion in so ruling.

■ In the briefs and arguments before this court, however, the second question under the issue of compensation has been raised. Specifically, petitioners appear to press most seriously the contention that Mahony's expenses for accounting—to date and for any supplemental accounting—should be borne by the creditor banks and the New York Stock Exchange, and not by the bankrupt estate. To illustrate, at page 22 of his original brief, chief counsel for the petitioners says: "The Bankruptcy Act does not provide for the payment of compensation out of estate assets to those who are required to account under Section 2a(21)". So far as I understand the law, this statement is inaccurate and misleading. See, e. g., In re Eloise Curtis Inc., 326 F.2d 698, 700, 99 A.L.R.2d 1286 (2d Cir. 1964). In any case, despite what I consider to be a plain error of law on the part of counsel, this question is not properly before the court on this petition. In his orders here on review, Referee Ryan made no mention or direction on the subject whatsoever. Accordingly, it would be improvident for me to comment further on this phase of the matter.

The first two issues as framed hereinabove are more substantial. With regard to the first issue, it could be inferred superficially that the petitioners are wrong in arguing that the Referee misconceived the law by holding that an accounting under section 2a(21) is for the benefit of the trustee in bankruptcy only. On page 12 of his February 9 opinion, for example, Referee Ryan succinctly recognized that because of the plain language of the statute and for other reasons, an accounting under section 2a(21)

is to the court. See In re Eloise Curtis, Inc., supra at 700; General Orders in Bankruptcy 17(4). Nevertheless, if counsel for petitioners can be understood to urge that the Referee, although recognizing the correct principle of law, nevertheless failed to independently consider the Mahony accounting and make affirmative findings that it was appropriate and complete, then I am inclined to share his concern. See discussion infra at page 324.

The reasons for the apparent argument of counsel and this court's at least partial acceptance thereof can best be illustrated in the framework of a discussion which is addressed to what I consider to be the most significant point on this petition for review. In general, this point comes up under the second issue framed hereinabove—i. e., that the material submitted by Mahony to the court is not the kind of accounting required by section 2a(21) of the Bankruptcy Act, at least in the circumstances of this particular proceeding.

In his original brief before the court on the petition for review, counsel for the petitioners took the bald position that the Mahony accounting was insufficient in that it did not precisely comply with the Form No. 1103.2 set forth in 5 Collier on Bankruptcy 4024.2 (14th ed.). This argument is specious, as counsel for petitioners in effect has recognized in some of his post-argument submissions to this court. In a letter dated April 8, 1968 to the court, he pulled back from this extreme argument and acknowledged that flexibility in accounting form and even substance is permissible under section 2a(21).

I agree that flexibility in form and substance of an accounting under section 2a(21) is required. As all parties and the Referee in effect have agreed, neither the legislative history of the statute nor the reported cases cast up any guidelines for the form and substance of an accounting by a pre-bankruptcy liquidator or assignee. In general, however, I do not disagree with petitioners' argument that the cited form in Collier on Bankruptcy constitutes a reasonable outline of what information should be included in such accounting unless the exigencies of a particular case plainly require modifications, additions or deletions. Affirmatively stated, such an accounting should be under oath and include information concerning what assets and property of the bankrupt were initially acquired by the liquidator; what, if any, additional assets and property were thereafter acquired by the liquidator; his disposition of all or part of such assets and property; his disbursements for expenses and services; what monies, income or fees he received incidental to acquiring, husbanding and disposing of any assets or property; and a submission by the liquidator of his claim for compensation for services rendered. See In re Eloise Curtis, Inc., supra, at 700.

In enunciating these guidelines for the contents of a pre-bankruptcy liquidator's accounting, I do not mean to suggest that, as counsel for petitioners argues, the liquidator must set forth voluminous schedules revealing every detail of every transaction. Similarly, I do not intend to imply that the Referee has no discretion to add or subtract from the recited items of information in appropriate cases. For example, it may be that under the highly unusual circumstances of this case, the Referee will be satisfied that Mahony, because of extreme pressures of time and lack of resources he faced while liquidator, was and still is unable to furnish certain information which might be desirable in more typical cases. The Referee might also wish to consider the question of content of the accounting in the light of the potentially burdensome costs of an exhaustive job, which cost might fall upon the estate.

Although I have reviewed the Mahony accounting, chiefly for three reasons set out below, I decline to make any determination here as to its sufficiency under the aforementioned standards. First and

most obvious, Referee Ryan has greater familiarity with and understanding of these proceedings than I do. Second, my reading of the record indicates that counsel for the petitioner never made clear to the Referee just what deficiencies he should be included in such accounting unclaims to be found in the Mahony accounting. Third, no doubt in part because of the absence of a clear and specific presentation on behalf of petitioners, the record suggests that the Referee may have relied too heavily upon the submission by the trustee that he is satisfied with the Mahony accounting.

■ Especially in the light of the second and third reasons, it follows that the question of the sufficiency of the Mahony accounting must be remanded to Referee Ryan for further hearing. Certain additional comments upon the reasons for such a disposition, therefore, are in order.

■ In my view, counsel for petitioners in the first instance must specifically set forth for the guidance of the Referee, the trustee and other interested parties the specific deficiencies claimed to exist in the Mahony accounting. Unfortunately, even on oral argument before this court on April 2, 1968, the petitioners' claims were woefully vague; in a post-argument letter to the court dated April 8, 1968, counsel for petitioners for the first time set forth at least some reasonably specific contentions of omissions and defects. He should submit a complete list of such claims to the Referee, who can then evaluate them in the light of the circumstances, particularly as shown by the submissions of Mahony and the trustee.

■■ The last statement leads naturally to further comment regarding my previously expressed concern that the Referee may have relied too heavily upon the trustee's expressed satisfaction with the accounting as it now exists. As pointed out hereinbefore, there is no doubt that Referee Ryan properly recognized the principle that a section 2a(21) accounting is "to the court". The difficulty, as I see it, is that after acknowledging this principle, the Referee thereafter in his opinion made no affirmative findings regarding the adequacy of the accounting, except perhaps in a conclusory fashion. Moreover, on pages 12 and 13 of his February 9 opinion, he seems to have reasoned that because the court lacks facilities to independently investigate and examine an accounting of this kind, virtually exclusive reliance upon the trustee's evaluation of the matter is appropriate. If this analysis of the Referee's reasoning is correct, I respectfully disagree. As already suggested herein, I believe that the bankruptcy court must make its own appraisal of the adequacy of a section 2a(21) accounting. In so saying, however, I do not mean to suggest that the trustee's views are not entitled to great weight. Necessarily, the trustee's views can be said to be of paramount importance; they cannot be, however, the exclusive determinant. In the context of this case, for example, the bankruptcy court should make its own affirmative findings regarding the sufficiency of the Mahony accounting after hearing all interested parties, especially the trustee, the complaining petitioners and the liquidator himself.

The question of the sufficiency of the Mahony accounting is remanded to the Referee for further hearings consistent with this opinion. Nothing herein contained should be construed to bar any pending or future claims which liquidator Mahony has made or may make for compensation for services rendered. It is so ordered.