# United States Court of Appeals
## For the First Circuit

No. 09-1165

IN RE: AMERICAN BRIDGE PRODUCTS, INC.,

Debtor.

_____

LYNNE F. RILEY, CHAPTER 7 TRUSTEE OF
AMERICAN BRIDGE PRODUCTS, INC.,

Appellant,

v.

NICHOLAS J. DECOULOS, ESQ.,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before
Boudin, Stahl and Lipez,
Circuit Judges.

    Lynne F. Riley with whom Altman Riley Esher LLP was on brief
for appellant.
    Charles R. Bennett, Jr. with whom Kathleen E. Cross and Hanify
& King, P.C. were on brief for appellee.

March 10, 2010

**BOUDIN**, <u>**Circuit Judge**</u>.  More than 16 years ago, Nicholas Decoulos (appellee in this court) was appointed receiver of American Bridge Products, Inc., by a Massachusetts state court, and more than 13 years ago American Bridge was put into involuntary bankruptcy.  Most of the issues involved in American Bridge's receivership and bankruptcy have been resolved, but a claim endures by bankruptcy trustee Lynne Riley (now appellant in this court) to recover from Decoulos for misfeasance while receiver that damaged the American Bridge estate.  That claim is the subject of the present appeal.

In August 1993, American Bridge and its then-owners filed a complaint in Massachusetts Superior Court alleging that a group of defendants--including Robert Conti, a major investor in American Bridge, and John Conti, Robert's son and a former employee of American Bridge--had converted and were conspiring to convert American Bridge's assets to their private benefit in fraud of the company's creditors.  Everett Savings Bank was also charged with assisting Robert Conti to divert American Bridge's bank assets into accounts controlled by Conti.

The next month, the state court appointed Decoulos as receiver of American Bridge.  Not long after, American Bridge's principals and creditors began to complain about Decoulos' performance as receiver.  Efforts opposing Decoulos began in October 1993, and included a failed attempt to put the company into

federal bankruptcy proceedings, fruitless complaints about Decoulos to state bar authorities, and objections to Decoulos' fee and other applications, which were nevertheless approved by the state court, summarily so in most cases. In July 1995, American Bridge's owners filed the first of two unsuccessful motions seeking to remove Decoulos as receiver.

In August 1996, the owners and a major creditor of American Bridge filed an involuntary Chapter 7 bankruptcy petition against the company. When Decoulos resisted, proponents filed an affidavit that set forth in detail Decoulos' shortcomings as receiver. In October, the federal bankruptcy court granted the motion for an involuntary bankruptcy and shortly thereafter appointed Joseph Braunstein as bankruptcy trustee. Control of the estate passed to him.

Under the Bankruptcy Code, Decoulos now had an obligation to account to the federal court as to the property he had held as receiver (and which now passed to the trustee). 11 U.S.C. § 543(b)(2) (2006) (accounting requirement); id. § 543(c) (surcharge authority); Fed. R. Bankr. P. 6002 (2009). Without filing an accounting, Decoulos sought compensation for earlier work as receiver. Braunstein and several creditors objected and the court allowed an examination of Decoulos as to the fate of certain American Bridge assets. The matter then remained in limbo while other disputes involving the bankruptcy were resolved. In March

1999, Braunstein resigned as trustee and was replaced in October 1999 by Riley.

On March 9, 2000, Riley filed an adversary proceeding against Decoulos personally, alleging inter alia negligence and breach of fiduciary duty by Decoulos in his capacity as receiver.[1] Under Massachusetts law, these two claims had a three-year statute of limitations, Mass. Gen. Laws ch. 260, § 2A (2009); LoCicero v. Leslie, 948 F. Supp. 10, 12 n.2 (D. Mass. 1996), and Decoulos had ceased to be a receiver in 1996. Further, Riley's predecessor Braunstein had investigated possible claims against Decoulos and determined not to pursue them.

Nevertheless, the bankruptcy court rejected Decoulos' statute of limitations objection on the ground that the statute did not start to run until Decoulos had accounted for his administration and been discharged, and neither had occurred either in the state court prior to bankruptcy or in the bankruptcy court thereafter. In re Am. Bridge Prods., Inc., 328 B.R. 274, 350 (Bankr. D. Mass. 2005). A trial on Riley's claims, held over 15 days in 2004, resulted in detailed findings by the bankruptcy judge that Decoulos had mismanaged the receivership, and a substantial judgment was awarded to Riley as trustee. Id. at 341-50, 356.

---

[1]Riley also brought a claim for unfair trade practices, claims against Decoulos in his capacity as attorney to the estate, claims against his law firm and claims against other defendants, but none of these are at issue on this appeal.

Liability was imposed, with particulars, for "fail[ing] to adhere to the orders issued by the" state court, "fail[ing] to take possession of [American Bridge]'s assets in a timely manner," "fail[ing] to recognize and proceed with causes of action," "fail[ing] to act impartially in considering the allegations in" American Bridge's Complaint, "fail[ing] to take steps" to prevent the conversion of American Bridge's assets, and "fail[ing] to seek, let alone obtain, appropriate court orders" to pursue actions against the defendants in the litigation. In re Am. Bridge Prods., 328 B.R. at 342.

The judgment against Decoulos was for the lesser of $379,173.78 or the amount needed to pay all creditors and administrative claims of the estate, In re Am. Bridge Prods., 328 B.R. at 356, amended thereafter to add prejudgment interest. The damages, calculated item by item, comprised waste of inventory and materials under Decoulos' management; diminishment of value of assets; unremedied diversion to the Contis of debts owed the company; and unremedied loss due to similar diversion by Everett Savings Bank. Id. at 349. The bankruptcy court also ordered Decoulos to disgorge any fees paid to him while receiver. Id. at 349-50.

On appeal, the district court reversed, ruling that the Massachusetts statute of limitations ran from the discovery of Decoulos' actions and barred Riley's claims. In re Am. Bridge

<u>Prods., Inc.</u>, 398 B.R. 724, 730-34, 736 (D. Mass. 2009). Riley now appeals. Decoulos defends the district court and, in addition, offers alternative grounds for sustaining its result. Our review of rulings of law is de novo; the bankruptcy court's findings are tested for clear error. <u>In re Northwood Props., LLC</u>, 509 F.3d 15, 21 (1st Cir. 2007).

At the threshold, Decoulos claims that the bankruptcy court lacked subject matter jurisdiction, arguing first that under <u>Barton</u> v. <u>Barbour</u>, 104 U.S. 126, 136 (1881), actions against the receiver required the approval of the state court and, second, that under the <u>Rooker-Feldman</u> doctrine federal courts cannot review final orders of a state court. <u>Rooker</u> v. <u>Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>D.C. Court of Appeals</u> v. <u>Feldman</u>, 460 U.S. 462 (1983). The second argument was raised below, although the first was not; however, <u>Barton</u> v. <u>Barbour</u> may be viewed as jurisdictional, <u>Muratore v. Darr</u>, 375 F.3d 140, 146-47 (1st Cir. 2004); <u>but cf.</u> Robinson v. Tr. of N.Y., N.H. & H.R. Co., 60 N.E.2d 593, 599 (Mass. 1945).

Barton aims to protect the authority of the court that appointed the receiver and avoid costs and other complications that would arise from dual superintendence of the same property. <u>Barton</u>, 104 U.S. at 136-37; <u>In re Linton</u>, 136 F.3d 544, 545 (7th Cir. 1998). In this case, authority over the estate had passed to the federal courts before Riley's claim was filed; the receiver was

therefore responsible to account to the bankruptcy court, and Riley had permission from that court to bring suit.  Thus, the concerns that animated Barton were not present.

As for Rooker-Feldman, the rule applies only when "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005).  Whatever limited and implicit attention the state court may have paid to charges of wrongdoing when approving Decoulos' various applications on largely unrelated topics, no prior judgment was entered by the state court on the claims that Riley now pursues.

Finally, the bankruptcy court had authority to resolve Riley's claims.  Decoulos had made his own claim in the bankruptcy court for compensation and a compulsory counterclaim appears to fall within the statutory definition of core proceedings.  28 U.S.C. § 157(b)(2); In re CBI Holding Co., Inc., 529 F.3d 432, 460 (2d Cir. 2008); In re Am. Bridge Prods., 398 B.R. at 729-30.  We need not determine whether, independently, the statutory surcharge power under 11 U.S.C. § 543 extends to pre-bankruptcy conduct by a prior custodian.  See generally In re Sundance Corp., 149 B.R. 641, 650 (Bankr. E.D. Wash. 1993).

On the merits, we agree with Decoulos that but for his status as receiver, the limitations defense would likely succeed. Riley framed her charge as state causes of action for negligence and breach of fiduciary duty, and she does not argue they have become federal claims merely because the estate later entered federal bankruptcy. As already noted, the Massachusetts limitations period for the state claims is three years, and Decoulos' challenged conduct as receiver occurred more than three years before Riley sued.

Of course, limitations statutes may be tolled where the wrongful conduct was concealed or difficult to ascertain at the time it occurred. E.g., Koe v. Mercer, 876 N.E.2d 831, 836 (Mass. 2007). But although Riley contends otherwise, enough was known by those who objected to Decoulos' conduct in the state court and by Braunstein, who conducted his own investigation, to bring an end to such tolling more than three years before Riley's suit. We would describe the pertinent facts in detail if the fate of Riley's appeal depended on this tolling issue, but it does not.

The bankruptcy court rejected the limitations defense not because of concealment or lack of knowledge but on the ground that Decoulos had not rendered a final accounting or been discharged in either state or federal court. In re Am. Bridge Prods., 328 B.R. at 350. In the bankruptcy judge's view, a receiver or bankruptcy trustee's liability for misconduct remains open, despite ordinary

limitations rules, until a final accounting and discharge (unless, presumably, the issue had been definitively determined by a competent court before a final accounting).

Thus, the bankruptcy judge said that "[a]ny determination of a receiver's liability, whether personal or official, is not subject to a statute of limitations defense in the absence of his discharge," 328 B.R. at 350, citing to a passage of the treatise Clark on Receivers; the passage can be read to say that a receiver's liability for misconduct in relation to his duties continues, despite the statute of limitations, until he has fulfilled his duty to account and is discharged.[2] "Decoulos," the judge pointed out, "neither received a discharge in [state court] nor filed a report and account in accordance with Fed. R. Bankr. P. 6002." Id.

In reversing, the district court said that the treatise position, supported only by citation to a 19th-century English case, might have been referring only to actions against the receiver in an official capacity (as opposed to personal dereliction) and anyway nothing showed that Massachusetts has adopted the treatise position. In re Am. Bridge Prods., 398 B.R.

---

[2]"Statute of limitations does not run in favor of receiver. The position of a receiver is one in which liability to account would not easily be barred, and so long as he is living he must be held to have been a trustee of the money received[,] therefore the defense of the statute of limitations is not a bar to a claim against him." Clark, Law of Receivers, § 418, at 705-06 (3d ed. 1959).

at 730-32. The district court thought the position refuted by Massachusetts cases indicating that where an ordinary trustee breaches his duties and repudiates the trust, the limitations period begins to run when a beneficiary has knowledge of the breach and repudiation. E.g., Lattuca v. Robsham, 812 N.E.2d 877, 884 (Mass. 2004).

However, this court In re San Juan Hotel Corp., 847 F.2d 931 (1st Cir. 1988), rejected a former bankruptcy trustee's argument that "personal liability actions against a bankruptcy trustee can be time-barred before the trustee has presented a final account to the bankruptcy court and been discharged." Id. at 939. Instead, the court held "a trustee cannot be released from liability before discharge" because the purpose of the final accounting is to ensure that a trustee can be held accountable after making full disclosure. Id. at 939.[3]

True, the trustee in San Juan Hotel was already under federal authority when he committed his wrongs while Decoulos was a state receiver at the time of the wrongs. Although the bankruptcy court had jurisdiction to decide the claims against Decoulos, facially the claims remained ones arising under state law and presumptively Riley could not recover if those claims were now

---

[3]This was one of two alternative grounds adopted in San Juan Hotel (the other being tolling of the statute until the wrong was revealed). San Juan Hotel is not binding precedent as to Massachusetts law but rather is relevant and useful authority.

-10-

barred under state limitations rules.  The first assumption seems fairly secure and the second, if perhaps open to debate, we will assume _arguendo_ in favor of Decoulos.[4]

Claims against a trustee for breach of fiduciary duty are typically equitable claims, In re San Juan Hotel Corp., 847 F.2d at 938, but, in Massachusetts, such equitable claims are nevertheless subject to statutes of limitation.  Stoneham Five Cents Sav. Bank v. Johnson, 3 N.E.2d 730, 732 (Mass. 1936) ("statutes of limitation apply of their own force to suits in equity"); Farnam v. Brooks, 26 Mass. 212, 216 (1830); 6 Smith & Zobel, Massachusetts Practice § 8.17 (2d ed. 2006).  The district judge was correct in saying that in a suit against an ordinary faithless or incompetent trustee, the statute begins to run once the wrongdoing comes to light.  O'Connor v. Redstone, 896 N.E.2d 595, 607-09 (Mass. 2008).

But ordinary trusts operate without much court supervision and often indefinitely.  Receivers and bankruptcy trustees, by contrast, look to wind up an estate, aiming at a final, closing-the-books accounting.  Hess, Bogert & Bogert, The Law of Trusts and Trustees § 14, 165-71 (3d ed. 2008); Scott & Fratcher, The Law of Trusts § 16A, 211-12 (4th ed. 1989).  San Juan Hotel treated the rule it propounded not as some peculiarity of

---

[4]Occasionally, a federal connection may convert state law claims into ones governed by federal law, Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-67 (1987); Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 456-57 (1957), but the concerns in those cases are different.

federal law but as a general rule applicable to trustees who are winding up estates, and the Clark treatise relied upon by the bankruptcy judge was not focused on federal law at all. Absent Massachusetts case law to the contrary, it is reasonable to assume that Massachusetts would follow the same approach in cases where the receiver is engaged in winding up an estate. Cf. Mass. R. Civ. P. 66(e) ("[N]o order discharging a receiver from further responsibility will be entered until he has settled his final account.").

Decoulos argues that the Clark treatise approach entails liability without limit in time, but filing the required accounting and obtaining a discharge would trigger limitations protections. In re San Juan Hotel Corp., 847 F.2d at 940. Further, although limitations periods have not run, Massachusetts case law allows laches to be asserted against equitable claims where undue delay combines with prejudice. Cohen v. Bailly, 165 N.E. 7, 11 (Mass. 1929); W. Broadway Task Force v. Boston Hous. Auth., 608 N.E.2d 713, 716 (Mass. 1993). So even without a final accounting, Decoulos was free to show that he had been prejudiced by the delay in the claims against him; but he did not do so.

Decoulos does argue that his receivership terminated; that he gave an "oral accounting" to Braunstein; and that the bankruptcy court's authority to "surcharge" is limited only to improper disbursements. But termination neither extinguishes

liabilities nor under San Juan Hotel and the Clark treatise starts the limitations period running. And an accounting must ordinarily be presented for court review, e.g., Fed. R. Bankr. P. 6002; In re Ira Haupt & Co., 287 F. Supp. 318, 322-23 (S.D.N.Y. 1968); disclosure to a successor may have other consequences but it does not prompt a discharge or constitute approval by a court.

Decoulos says that "virtually all" of the conduct for which he was surcharged had been approved by the state court and, under settled doctrine governing trustee conduct and under res judicata principles, cannot be made the basis for personal liability.[5] But most of the orders entered by the state court are unrelated to the actions for which the bankruptcy court surcharged him. Ironically, the bankruptcy court surcharged Decoulos in part for actions taken in disregard of or contrary to the orders of the state court which Decoulos claims protect him.

The state court order most closely related to Riley's claims permitted Decoulos to sell American Bridge's personal property for $6,000 to a company controlled by the Contis. Decoulos argues this order barred the bankruptcy court from awarding $29,000 against him for allowing "the loss and waste of

---

[5]"[A] trustee acting with the explicit approval of a bankruptcy court is entitled to absolute immunity" from personal liability as long as trustee has made "full and frank disclosure to creditors and the court" and did not "prevaricate[] or otherwise act[] in bad faith." In re Mailman Steam Carpet Cleaning Corp., 196 F.3d at 8; accord, Kermit Const. Corp. v. Banco Credito y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir. 1976)).

[American Bridge]'s assets." Id. at 343. But the bankruptcy court premised liability not on misconduct making the sale approved by the state court, but on Decoulos' "failure to secure inventory and equipment belonging to [American Bridge]," allowing conversion of $29,000 in value before the sale. Id.

The other state court sale-of-assets order cited by Decoulos authorized him "to sell the blueprint machine that is presently in the possession of John Conti for the sum of Eight Hundred ($800.00) Dollars." The bankruptcy court held Decoulos liable for the loss in value of $35,000 in equipment acquired in 1990, id. at 285, 344, but the blueprint machine, referred to by the bankruptcy court as having been purchased in 1993, id. at 298, does not appear to have been part of this category.

In re Iannochino, 242 F.3d 36, 45 (1st Cir. 2001), relied on by Decoulos, is not on point. There, an attorney making a final fee request from an estate gained approval without objection as to the quality of his services and was later sued for malpractice. The complaint was deemed barred by claim preclusion on the ground that the misconduct could and should have been asserted as a defense to the fee award and that allowing the malpractice suit would undermine the final judgment by opening up the fee award to disgorgement, contrary to claim preclusion doctrine.

Here, by contrast, objectors to the initial Decoulos fee request did object that Decoulos had been guilty of misconduct--

-14-

exactly what Iannochino says they should have done; but the state court seems to have ignored the issue and rejected two further requests to remove Decoulos with cursory or no explanation. Of course, had the state court heard evidence and made findings vindicating Decoulos, there might be possible claims of issue preclusion; but the burden of showing such a vindication was upon Decoulos and he has not even attempted any such showing.[6]

Lastly, Decoulos argues that the bankruptcy court was barred from imposing liability on him for failing to pursue prompt action against Everett Savings Bank because, in his last report to the state court, Decoulos reported the full amount of the misappropriation, along with the bank's possible defenses. Decoulos' mere reporting of the amount of the claim does not indicate that the state court approved his failure to pursue it. In a nutshell, the state court does not appear to have authorized or approved the challenged conduct.

Decoulos does not argue on appeal that the bankruptcy court erred in finding that he breached his duty of care, but does

---

[6]The Restatement requires for issue preclusion a showing that the issue was actually litigated and decided on the merits. Restatement (Second) of Judgments §§ 27-28 (1982). Massachusetts law is similar. Alba v. Raytheon Co., 809 N.E.2d 516, 522 (Mass. 2004) (where not "strictly essential" to the judgment, proponent must show adjudication to be "the product of full litigation and careful decision" (quoting Green v. Brookline, 757 N.E.2d 731, 735-36 (Mass. App. Ct. 2001))). The resolution must also be final, a requirement that Iannochino found satisfied because--unlike Decoulos' awards--the disposition ended the attorney's service. Iannochino, 242 F.3d at 45.

-15-

argue in closing that the evidence does not support the finding that his actions or inactions caused the damages assessed.  We review the bankruptcy court's causation finding for clear error, <u>Clement</u> v. <u>United States</u>, 980 F.2d 48, 53 (1st Cir. 1992), and our review here does not leave us "with the definite and firm conviction that a mistake has been committed," <u>id.</u> (quoting <u>Dequio</u> v. <u>United States</u>, 920 F.2d 103, 105 (1st Cir. 1990)).

The judgment of the district court is <u>vacated</u> and the case <u>remanded</u> for further proceedings consistent with this decision.  Costs are taxed in favor of the appellant.

<u>It is so ordered.</u>